UNITED STATES of America, Appellee,

v.

Ira T. SMITH, Appellant.

No. 81–1728.

United States Court of Appeals,
Tenth Circuit.

July 6, 1982.

Rehearing Denied July 27, 1982.

Certiorari Denied Feb. 22, 1983.

See 103 S.Ct. 1183.

Robert G. Duncan, Kansas City, Mo. (David Gilman, Overland Park, Kan., with him on the brief), for appellant.

Amanda S. Meers, Asst. U. S. Atty. (Jim J. Marques, U. S. Atty., and Vernon E. Lewis, Asst. U. S. Atty., Kansas City, Kan., with her on the brief), for appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Dr. Ira T. Smith was convicted in a federal district court jury trial of violating 18 U.S.C. § 2315 by receiving stolen goods, with a value of $5000 or more, which had been part of interstate commerce and which he knew to have been stolen. He was also convicted of violating 18 U.S.C. § 371 by conspiring to transport in interstate commerce stolen goods with a value of $5000 or more, a violation of 18 U.S.C. § 2314.

On appeal, Dr. Smith proffers five challenges to his convictions: (1) the federal district court lacked jurisdiction because the items of stolen property set forth in the indictment were improperly aggregated to reach the $5000 jurisdictional amount; (2) the trial court erred in its instructions to the jury concerning aggregation; (3) the trial court erred in refusing and failing to instruct the jury that the testimony of an informant who is a narcotics addict is inherently unreliable and must be considered with great care; (4) the trial court erred in admitting hearsay testimony over objection; and, (5) his rights under the Fourth Amendment to the Constitution of the United States were violated. Following a recitation of the pertinent facts, we take up these challenges seriatim.

In 1980, law enforcement officials were conducting surveillance of Marvin Gabb, a drug addict who had been supporting his habit for more than twenty years by theft and other criminal activity. Mr. Gabb was observed meeting a man in a supermarket parking lot, who later was identified as Dr. Smith. When Mr. Gabb subsequently was arrested for theft by state and federal law enforcement officials, he implicated Dr. Smith as a purchaser of goods that Dr. Smith knew to have been stolen. He agreed to cooperate with officials against Dr. Smith in exchange for immunity from prosecution as well as protection and compensation under the Federal Witness Protection Program. As a result of information supplied by Mr. Gabb, a federal search warrant was issued to search Dr. Smith's home. None of the four items listed in the warrant was found, but thirty-five other items not listed were seized, including a notebook, in which Dr. Smith had recorded his purchases of art objects. Numerous other items were photographed, and Dr. Smith was questioned. He denied knowing that any of the art objects were stolen. Following this search, Mr. Gabb examined the photographs and identified items that he had stolen. Identification also was made by some of the theft victims. A second federal search warrant was issued for another search of Dr. Smith's home. Ninety-six objects were seized. Forty-six of the items taken in the two searches ultimately were listed in the indictment.

## I. Jurisdiction

An essential element in either of Dr. Smith's convictions is that the property involved had a value of $5000 or more. Dr. Smith argues that it is improper to aggregate values to reach this jurisdictional amount and that at least one item must have a value of $5000 or more in order to constitute a federal offense. He does not dispute that the aggregate value of the items listed in the indictment was $5000 or more. With respect to these offenses, Congress has defined "value" as the "face, par, or market value, whichever is the greatest, and the aggregate value of all goods ... referred to in a single indictment shall constitute the value thereof." 18 U.S.C. § 2311. The United States Supreme Court has interpreted this section to allow aggregation of the values of individual deliveries of stolen goods to reach the jurisdictional amount.

> [W]here the shipments have enough relationship so that they may properly be charged as a single offense, their value may be aggregated. The Act defines "value" in terms of that aggregate. The legislative history makes clear that the value may be computed on a "series of transactions."

*Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960). ■ It is clear that Mr. Gabb and Dr. Smith engaged in a series of transactions properly charged as a single offense. Accordingly, it was proper to aggregate the values of the items set forth in the indictment to reach the jurisdictional amount.

## II. Jury Instruction on Aggregation

■ The trial court instructed the jury that the government had the burden of establishing beyond a reasonable doubt that the value of the property in question was in excess of $5000 and that "value" meant the "aggregate value of all goods, wares, and merchandise referred to in a single indictment." Record, vol. 1, at 47. Dr. Smith argues that a determination as to whether the values should be aggregated is for the jury to make and that it was error to instruct the jury to aggregate the values as a matter of law. We do not agree. The jury's task was to weigh the evidence received at trial concerning the value of each item which it concluded that Dr. Smith had received in violation of § 2315 or conspired to transport in violation of §§ 371 and 2314, and then to determine whether the aggregate value with respect to each offense was $5000 or more. However, it was proper for the trial court to instruct the jury that, as a matter of law, the values of individual items should be aggregated to reach the jurisdictional amount. *See Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

## III. Addict Instruction

In his third challenge, Dr. Smith alleges that the trial court erred in refusing and failing to instruct the jury upon request that the testimony of a narcotics addict must be considered with great care and weighed with caution. Mr. Gabb's testimony was especially damaging to Dr. Smith because it established Dr. Smith's knowledge that he was receiving stolen goods. Dr. Smith requested the trial court to submit the following instruction to the jury:

> If an accomplice is also a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have abnormal fear of imprisonment in which his supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You of course may give the testimony such weight as you think proper, after considering all relevant circumstances.

Record, vol. 1 at 26. Although the trial court refused this instruction, it did instruct the jury that the testimony of an accomplice "is always to be received with caution and weighed with great care," *id.* at 66, that the testimony of a witness who provides evidence against a defendant for pay or immunity "must be examined and weighed by the jury with greater care than the testimony of an ordinary witness," *id.* at 67, and that the fact of conviction could be considered in determining the weight and

credit to be given to the testimony of a felon. *Id.* at 68. A general credibility instruction also was given. *Id.* at 69.

Most federal circuit courts of appeals have noted with approval special narcotics addict instructions, such as the one requested by Dr. Smith. *See, e.g., United States v. Lee,* 506 F.2d 111 (D.C.Cir.1974), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975); *United States v. Gregorio,* 497 F.2d 1253 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *Government of Virgin Islands v. Hendricks,* 476 F.2d 776 (3d Cir. 1973); *United States v. Collins,* 472 F.2d 1017 (5th Cir. 1972), *cert. denied,* 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973); *United States v. Kinnard,* 465 F.2d 566 (D.C.Cir. 1972). It is apparent from analysis of these and other cases that the determination of when an instruction is required turns on the particular facts of the case.

Some circuit courts have required such instructions in certain situations. In *United States v. Griffin,* 382 F.2d 823 (6th Cir. 1967), the court held that it was plain error for the trial court to fail to instruct the jury that the testimony of an informer who was a narcotics addict must be considered with care and weighed with caution. In *Griffin,* the addict's testimony was corroborated with respect to one defendant, but uncorroborated with respect to another. In *Fletcher v. United States,* 158 F.2d 321, 322 (D.C.Cir.1946), the court noted that "a drug addict is inherently a perjurer where his own interests are concerned ...." In *Government of Virgin Islands v. Hendricks,* 476 F.2d 776 (3d Cir. 1973), the court held that an addict instruction should be given when an informant-addict-witness was in the pay of the government, although different results might obtain if the witness' testimony were corroborated. Finally, in *United States v. Kinnard,* 465 F.2d 566 (D.C.Cir.1972), the court held that an addict instruction was necessary where "the testimony of the addict-informant [was] uncorroborated in some material respect." *Id.* at 572.

Other circuit courts have held that the failure to give an addict instruction does not necessarily constitute reversible error. In *United States v. Hopkins,* 518 F.2d 152 (3rd Cir. 1975), the court held that the defendant was not prejudiced by the trial court's failure without objection at trial to give an addict instruction, because other cautionary instructions were given, and the issue of the credibility of the addict witness was exhausted during testimony. In *United States v. Gregorio,* 497 F.2d 1253 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974), the court held that cautionary instructions on accomplices, informers, and immunity were adequate to emphasize the care with which the jury should regard and weigh the testimony of an addict witness, at least when his testimony was corroborated. The Ninth Circuit also would affirm a conviction when no addict instruction was given where the fact of present addiction was not established and the testimony was corroborated, *United States v. Tousant,* 619 F.2d 810, 812 (9th Cir. 1980).

■ In our view, Dr. Smith was not legally prejudiced by the refusal and failure of the trial court to give an addict instruction. The instructions to the jury on accomplice, immune informant, and felon testimony, along with the general credibility instruction, were sufficient to alert the jury to consider with special care and weigh with caution the testimony of Mr. Gabb. Moreover, the issue of Mr. Gabb's addiction was explored extensively during testimony.

■ We hasten to add, however, that normally the trial court runs a substantial risk of causing prejudice to a fair trial when it fails to instruct the jury concerning the inherent unreliability of an addict's testimony. As a general rule, prudence dictates the giving of an addict instruction whenever the prosecution has relied upon the testimony of a narcotics addict. The refusal to give the instruction in this case was not error only because the instructions pointed out other indicia of unreliability sufficient to alert the jury that Mr. Gabb's testimony must be considered with unusual care.

### IV. Admission of Hearsay

■ Dr. Smith argues that the trial court's admission of certain hearsay evidence requires reversal of his conviction and grant of a new trial. He cites the trial court's admission over objection of portions of the testimony of Bonnie Lee Stahnke, Gary Jenkins, and James K. Weber as reversible error.

Ms. Stahnke was assistant security manager for a Neiman-Marcus Store from which several of the art objects found in Dr. Smith's home were stolen. She testified that she verified the theft of these objects and the price of each by inquiring of sales clerks at the store. The trial court denied Dr. Smith's objection to the admission of this testimony as hearsay, but the government later withdrew its offer of these exhibits and they were deleted from the indictment prior to the jury's deliberation.

Officer Jenkins was a Kansas City, Missouri, police officer. He observed Mr. Gabb meeting with a man of the same general description as Dr. Smith. He noted the second man's automobile license number, initiated a check through the license bureau, and was advised that the automobile was registered to Dr. Smith. However, Dr. Smith admitted in his testimony that he met Mr. Gabb on that occasion at that location.

FBI Agent Weber's testimony relied on the statements of others to establish that certain art objects found in Dr. Smith's possession or shown or offered to him were stolen goods. However, the fact that those items still listed in the indictment at the time of the jury's deliberation were stolen was established by other undisputed evidence.

Assuming that this challenged testimony of Ms. Stahnke, Officer Jenkins and Agent Weber was inadmissible hearsay, its admission was not prejudicial, because no substantial right of Dr. Smith's was affected. Fed.R.Crim.P. 52(a). Indeed, the admission of this testimony, if erroneous, was error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### V. Search and Seizure

■ Dr. Smith asserts that the items seized at his home pursuant to two search warrants and introduced into evidence should have been suppressed at trial.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure requires that a motion to suppress evidence under Rule 41(f) be made before trial. Rule 12(f) provides that failure to make such a motion constitutes waiver, but provides that the court may grant relief from the waiver for cause shown.

Dr. Smith filed a timely pre-trial suppression motion on the ground that state law enforcement officials were present at the execution of a federal search warrant. The trial court denied this motion. Later at trial, Dr. Smith raised his suppression argument by objection and by post-verdict motion for acquittal or judgment n. o. v., or, in the alternative, for a new trial, asserting that the first search was unlawful because it was exploratory or general and thus tainted the second search. The trial court admitted the challenged evidence over objection and denied the post-verdict motion. "The purpose of the rule requiring that motions to suppress be made prior to trial is to provide orderly proceeding during the trial of a case by eliminating from the trial 'disputes over police conduct not immediately relevant to the question of guilt.'" *Mesmer v. United States*, 405 F.2d 316, 318–19 (10th Cir. 1969) (citing *Jones v. United States*, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960)). We find in the record no evidence that Dr. Smith lacked the opportunity to make his motion in a timely manner, and we do not think that the trial court abused its discretion in concluding that Dr. Smith had waived the right to raise the argument at a later time. The trial court might have found that the waiver should be set aside for good cause, but it did not, and, on these facts, we will not disturb the trial court's exercise of its discretion.

AFFIRMED.