**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John David EASTERLING, a/k/a Donald Ray Doyle, Defendant–Appellant.**

**No. 90–6000.**

United States Court of Appeals,
Tenth Circuit.

Dec. 18, 1990.

Leslie M. Kaestner, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Michael McGuire, Oklahoma City, Okl., for defendant-appellant.

Before McKAY, SEYMOUR, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

On August 23, 1989, a seven-count indictment was returned against defendant-appellant, John David Easterling ("Easterling"), and co-defendant, Lisa Rosemary Thornton ("Thornton"). The indictment included charges of conspiracy to distribute methamphetamine, and numerous firearm violations. Easterling waived his right to a jury trial and entered into a plea agreement with the Government where he pled guilty to Count I of the Indictment, conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, and guilty to Count I of the Information (to be filed the day of defendant's plea), use of a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c).[1]

The district court accepted Easterling's plea and referred the matter to the United States Probation Office for preparation of a presentence investigation report.

Ultimately, two presentence reports were prepared in regard to Mr. Easterling. The initial report, dated November 7, 1989, provided offense conduct having a guideline range of six to twelve months.[2] At the first sentencing hearing, however, the district court voiced its dissatisfaction with the presentence report, indicating that based on information it had received regarding the defendant,[3] it was not convinced the presentence report adequately reflected the seriousness of defendant's offense conduct. Without prejudging the validity of the information it had received, the court emphasized such information did exist and should have been included in the presentence report. At this time, the court specifically enunciated the items it would consider. Included in this inventory of factors was defendant's "distribution of drugs to minors" and his involvement in the distribution "of as much as four pounds of methamphetamine ... over a two year period of time." The court noted it would consider the information only to the extent it was found credible, after allowing defense counsel the opportunity to refute it.

---

1. The plea agreement also contained, *inter alia,* the following provisions:

    2. (a) That at the time of sentencing, the Government will make no recommendation as to the actual sentence to be imposed, but may provide pertinent facts and other information to the Court concerning the offense and the defendant's involvement in it;

    . . . .

    (c) The Government reserves the right to provide any facts or pertinent background information concerning this defendant's role in the conspiracy consonant with Chapter 3 of the Sentencing Guidelines.

    . . . .

    3. (a) no agreement exists concerning a sentencing departure under the Sentencing Guidelines;

    (b) the defendant will not voluntarily cooperate in this investigation or trial;

    (c) the defendant has previously furnished relevant information to the Government, which will be more accurately set forth in a future memorandum to the Court;

    (d) the defendant has agreed to cooperate with the Government by providing informa-

tion concerning unlawful activities of others, and the Government agrees that self-incriminating information so provided will not be used against the defendant; further, such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

    . . . .

    5. The parties further agree that the United State [sic] has advised this defendant that the matter of sentencing is entirely within the discretion of the sentencing court and that the United States has made no promises or representations to this defendant or his attorney regarding what sentence or sentence guideline range might be imposed.

2. This initial assessment was based on the quantity of drugs provided in the plea agreement, which was .8 grams of methamphetamine, and .7 grams of amphetamine.

3. At the sentencing hearing held on December 5, 1989, the court indicated that information regarding defendant's offense conduct had been provided to him by the Probation Office.

The court continued sentencing to a later date[4] and requested the probation officer to "amend the presentence report to reflect those items which [the court had indicated] should be considered as a possible grounds for departure."

An amended presentence report was prepared by the probation officer indicating the offense conduct on Count I of the Indictment involved the distribution of 1,815.2 grams of methamphetamine (as opposed to .8 grams as set forth in the original presentence report) and .7 grams of amphetamine. The report also set forth the applicable guideline provision for this offense as § 2D1.1 of the United States Sentencing Commission, *Guidelines Manual*[5] (Nov. 1989) ("U.S.S.G." or "Guidelines"). In accordance with the conversion table found in U.S.S.G § 2D1.1(c), a base offense level of 30 was established, with a two level adjustment for the acceptance of responsibility resulting in a total offense level of 28. Based on this total offense level, and a criminal history category of I, the applicable range for Count I was determined to be seventy-eight to ninety-seven months imprisonment. The amended presentence report provided a Guidelines sentence of sixty months for the offense set forth in Count I of the Information, to run consecutively with any other sentence imposed.

At the second sentencing hearing, the court heard testimony from Agent Darrell Edwards of the Bureau of Alcohol, Tobacco and Firearms, and Kristine Disney of the Federal Probation Office.[6] The focus of the testimony was on how the Government had obtained the information used in determining the drug quantity in the amended presentence report, and the method of computation used in arriving at this quantity.

After considering the testimony relating to these matters, the court overruled defense counsel's objections,[7] finding that based on the evidence presented there was adequate information to support the computation of drug quantity used in the amended report. The court emphasized that the amounts listed in the report actually represented a minimum quantity in that the distribution of drugs to minors and to co-defendant, Thornton, were not included in the calculation.

Prior to imposing sentence, the court again inquired as to whether defendant wished to withdraw his plea. Defense counsel responded to this inquiry in the negative. The court ruled it would therefore sustain defendant's motion to enforce the plea agreement in that he would consider defendant's cooperation and "give him credit for ... the area in which he did cooperate." Under Count I of the Indictment, defendant was sentenced to ninety months imprisonment (the Guidelines range was seventy-eight to ninety-seven months) followed by a period of three years supervised release. Under Count I of the Information, defendant was sentenced to five years imprisonment (the Guidelines range was sixty months) to run consecutively with the sentence imposed under the indictment. Pursuant to the plea agreement, the remaining counts against Easterling were dismissed at the time of his sentencing.

Defendant appeals his sentence claiming: (1) the district court erred "in its upward departure under the sentencing guidelines concerning the amount of drugs and firearms allegedly distributed and possessed by the Defendant"; (2) "the government breached the plea agreement"; and (3) the district court erred "in failing to consider mitigating circumstances."

---

4. At the first sentencing hearing, the court also indicated it wanted to hear from both parties regarding any objections to the court's consideration of the additional information, and whether the defendant wished to withdraw from his plea agreement.

5. This section determines base offense levels by using a drug quantity table which converts various drug substances into heroin equivalents for the purpose of guideline computation.

6. Testimony was also heard from Susan Otto of the Federal Public Defender's Office, and Assistant United States Attorney Leslie Kaestner. Both were called as witnesses by defense counsel.

7. The court noted the absence of "a specific objection in the presentence report to the [drug] calculations."

## DISCUSSION

■ Defendant first contends the district court erred by its "upward departure"[8] from the recommended sentencing range provided by the Guidelines, advancing two grounds in support of this contention. First, defendant argues that the drug computations of the Government and probation officer were improperly relied on by the district court in that the figures were based on estimates "lack[ing] ... any articulable basis." Second, defendant argues that the drug quantity information was improperly obtained through the overreaching of the probation officer, which violated defendant's constitutional rights.

Defendant's contentions regarding the method of obtaining the information used in calculating the drug quantity used in the amended presentence report, and the basis of that calculation, are without merit. The district court made express findings regarding the origin of the drug quantity information, as well as the probation officer's use of estimates in calculating the amount. Thus, Easterling is in effect challenging the court's factual determinations regarding this matter.

■ We review a sentencing court's factual determinations under a clearly erroneous standard, *United States v. Lord*, 907 F.2d 1028, 1031 (10th Cir.1990); *United States v. Roberts*, 898 F.2d 1465, 1469 (10th Cir.1990), and "afford due deference to the district court's application of the Guidelines to the facts." *United States v. Boyd*, 901 F.2d 842, 845 (10th Cir.1990). Therefore, we will not disturb a factual finding of the district court "unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Beaulieu*, 893 F.2d 1177, 1182 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). This court has also recently held that "the quan-

tum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence...." *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir.) (citing *United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990)), *cert. denied*, — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

■ Defendant's contention that the district court erred in accepting the calculations of the probation officer is insupportable in light of the record and applicable case law. Defendant argues that the probation officer improperly based its calculations of the drug quantities in the amended presentence report on "estimates conceived by interrogated targets of the investigation in this case" and that such calculation lacked "any articulable basis."

This court has recently held that the use of estimates is an acceptable method of calculating drug quantities as long as the information upon which the estimates are based has a " 'minimum indicia of reliability.' " *United States v. Davis*, 912 F.2d 1210, 1214 (10th Cir.1990) (quoting *United States v. Jones*, 640 F.2d 284, 286 (10th Cir.1981)). In this case, the probation officer testified as to the basis of the offense level computation that she provided in the amended presentence report. It was her testimony that two individuals, both adults, who were interviewed by Agent Darrell Edwards of the Bureau of Alcohol, Tobacco and Firearms, made statements that they had purchased methamphetamines from Easterling on many occasions. Both individuals estimated the total amount of these purchases at approximately two pounds each. Accordingly, Ms. Disney used these estimated amounts (an aggregate amount of four pounds), and added the amount seized at the time of Easterling's arrest, which was .8 grams, to arrive at the quantity listed in the amended presentence report.[9] This method of calculation is sup-

---

8. We find defendant's characterization of the district court's action as an "upward departure" to be inaccurate. Defendant's sentence was properly within the range provided by the Guidelines based on his total offense level and criminal history category, as specified in the amended presentence report. Accordingly, no upward departure occurred.

9. The amended presentence report provided: "this offense involved the distribution of 1,815.2 grams of methamphetamine and .7 grams of

ported by our recent decision in *United States v. Reid*, 911 F.2d 1456, 1462–63 (10th Cir.1990), where we held that "the district court should consider inflows and outflows of drug inventory" plus any amount seized when estimating drug quantities.

It should also be noted that in her testimony, Ms. Disney stated that she had been aware of the information used in computing the guideline range in the amended presentence report prior to her preparation of the initial presentence report. Ms. Disney indicated, however, that she incorrectly believed that her offense level computation was confined to the information that had been stipulated to in the plea agreement.

■ After hearing the relevant testimony and objections thereto, the district court found the drug computations in the amended presentence report adequately reflected the amount of drugs involved in defendant's distribution activity, and that all such drugs were "relevant and related to the offense for which the Defendant has plead [sic] guilty." We find the above findings by the district court have ample support in the record. The drug quantity, although based upon estimates, was established by a preponderance of the evidence. *Reid*, 911 F.2d at 1462. Accordingly, we hold the district court's factual determinations regarding the quantity of illegal drugs used in the amended presentence report was not clearly erroneous.

■ Defendant's next objection is to the method used by the Government in obtaining the information used in preparing the amended presentence report. The district court heard lengthy testimony at the second sentencing hearing on how such information was derived, allowing defense counsel the opportunity to cross-examine the witnesses and offer any information to refute their testimony. After considering the testimony, counsel's arguments, and other evidence, the court expressly found

that all the information it was considering for purposes of sentencing "came independent of the Defendant and it came prior to the Defendant's own cooperation and statement [having] any relevance to the sentencing in the case." The court previously overruled defendant's objection relating to the alleged impropriety of using information obtained from co-defendant, Lisa Thornton, stating: "I haven't heard anything from Lisa Thornton that's been used to calculate the guidelines in any way.... [E]verything in here about the distribution activities came from the daughter [of Lisa Thornton] or from the other witnesses." Thus, defendant's allegation of "overreaching by the probation officer," based on her conducting a presentence interview with a "non-cooperating co-defendant", is without merit. The court made an express determination that none of the information obtained from co-defendant, Lisa Thornton, was used to calculate defendant's sentence. Even assuming *arguendo* the interview was improperly conducted, Easterling was not prejudiced by it in any way as no evidence obtained from the interview was used in calculating his sentence. Considering the independent sources of information described in the record, we cannot say these factual findings of the sentencing court are clearly erroneous.

Appellant's next claim of error is based on the Government's alleged breach of the plea agreement, and the district court's refusal to uphold "the spirit and the letter of the Plea Agreement" even though sustaining defense counsel's motion to enforce it. Appellant argues the Government's breach is twofold: (1) the failure of the Government to file a representative cooperation memorandum; [10] and (2) the Government's attempt to circumvent the agreed amount of drugs attributable to the defendant.

■ The Guidelines specifically provide that parties may stipulate to facts relevant to sentencing in their plea agree-

---

amphetamine, both are converted to a heroin equivalent for guideline computation purposes."

**10.** We note that a Confidential Memorandum was filed by Leslie M. Kaestner, Assistant United States Attorney, on December 13, 1989, re-

garding defendant's cooperation. Defendant contends on appeal, however, that this memorandum was untimely and did not accurately represent defendant's cooperation.

ment. U.S.S.G., § 6B1.4(a). However, the district court may decline to follow a sentence recommendation when it finds the stipulated facts do not accurately reflect "all relevant conduct bearing upon the guideline range." *United States v. Richardson*, 901 F.2d 867, 869 (10th Cir.1990). The district court made it clear at the first sentencing hearing that it did not find "the plea agreement adequately reflect[ed] the seriousness of the[ ] charges," and that assuming the information it had received was true, it "consider[ed] the almost minuscule quantities of methamphetamine that the plea agreement contemplated ... inadequate." In addition, the plea agreement in this case contained a provision indicating the parties' understanding that "sentencing is entirely within the discretion of the sentencing court and that the United States has made no promises or representations to this defendant or his attorney regarding what sentence or sentence guideline range might be imposed." This is consistent with U.S.S.G. § 6B1.4(d), p.s., which provides that "[t]he [sentencing] court is not bound by the stipulation[s]" contained in the plea agreement. "Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4, comment. para. 3.

The district court's consideration of information not stipulated in the plea agreement is further supported by this court's decision in *United States v. Boyd*, 901 F.2d 842, 844 (10th Cir.1990). In *Boyd*, we acknowledged that U.S.S.G. § 1B1.3(a) requires a sentencing court in determining the offense level to consider all " 'acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.' " *Boyd*, 901 F.2d at 844 (quoting U.S.S.G. § 1B1.3(a)). Furthermore, in this case, the court informed the parties it had received

additional information that warranted consideration, and described such information with particularity. Thereafter, the court allowed the parties to address the appropriateness of its consideration of the information, and gave defendant the opportunity to consider withdrawing his plea. The district court was therefore well within its authority to consider the information it had received regarding the defendant that was omitted from the plea agreement.

■ Defendant's contention that the Government breached the plea agreement in attempting to circumvent the amount of drugs stipulated in the plea agreement is also without merit. When construing a plea agreement, we look to what the defendant "reasonably understood" when entering his plea. *United States v. Hand*, 913 F.2d 854, 856 (10th Cir.1990) (citing *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir.1989)). The language of the plea agreement provided that "prior to any statements made by the defendant, the Government's evidence would show that the defendant was involved in the distribution of .8 grams of methamphetamine, and .7 grams of amphetamine"; however, the Government's actions were not violative of the agreement in this regard, for the plea agreement also contained the following provision:

(a) That at the time of sentencing, the Government will make no recommendation as to the actual sentence to be imposed, *but may provide pertinent facts and other information to the Court concerning the offense and the defendant's involvement in it;*

At the first sentencing hearing, the prosecutor maintained her support for the facts as stipulated in the plea agreement.[11] As noted earlier, however, a plea agreement does not "restrict the court's access to [relevant] information, nor could such an

11. Responding to the district court's dissatisfaction with the plea agreement, the prosecutor stated:

Well, Your Honor, as far as the plea agreement, there are obviously certain reasons that the Government has for entering into such an agreement.

We do feel that our decision was one made in full view of all facts, some of which are not before the Court.

So, we do feel that our plea agreement is appropriate under that position.

agreement properly do so." *Hand*, 913 F.2d at 857. The plea agreement was entered into between the "United States" and defendant. In effect, defendant argues that due to this agreement, not only is the prosecutor prohibited from offering additional information to the court regarding defendant, but that all government agencies, including the probation office, are similarly precluded. Such an argument is untenable under the Guidelines. The probation officer is free to offer assistance and information to the court within the parameters of the Guidelines. The Guidelines expressly provide that the Government is not precluded from providing information to the court known to it prior to entering a cooperation agreement with a defendant. U.S.S.G. § 1B1.8(b)(1). As noted earlier, we uphold the district court's determination that the information used in defendant's sentencing was known by the Government *prior* to defendant's debriefing. Accordingly, we find no breach of the plea agreement on this basis.

■ Defendant further argues that the Government breached the plea agreement by failing to file a representative cooperation memorandum. We construe the plea agreement according to what Easterling "reasonably understood" when entering his plea. *Hand*, 913 F.2d at 856. We recognize that when "a guilty plea [is] predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." *Id.* The amount of cooperation ultimately provided by defendant in this case is disputed. However, based on the language of the

agreement indicating that defendant had furnished relevant information to the Government prior to the agreement, and that such cooperation would be set forth in a memorandum to the court, the Government was obligated to timely file a memorandum indicating defendant's cooperation to this extent.[12]

■ Nonetheless, any breach by the Government that may have occurred is immaterial in light of the district court's handling of the matter. The court considered the testimony, the amended presentence report, and counsel's arguments regarding the alleged cooperation or lack thereof. The court then sustained defendant's motion to enforce the plea agreement, indicating it would "certainly consider the Defendant's cooperation." Prior to sentencing, the court stated that defendant had indeed cooperated and would be credited for such cooperation. The Guidelines do not require a downward adjustment for cooperation; rather, it may be considered by the court, in its discretion, as a mitigating sentencing factor. U.S.S.G. § 5K1.1, comment. (backg'd). After announcing defendant's sentence, the court emphasized that defendant's sentence would have been greater were it not for his cooperation to the Government.[13] Accordingly, we find the breach by the Government was not material, nor did it adversely affect defendant's sentencing.

■ Defendant's final contention of error is in the district court's alleged failure to consider mitigating circumstances. We find this contention is without merit. Among the factors defense counsel re-

---

12. The relevant provisions of the plea agreement provide:

> 3. (c) the defendant has previously furnished relevant information to the Government, *which will be more accurately set forth in a future memorandum to the Court;*
>
> (d) the defendant has agreed to cooperate with the Government by providing information concerning unlawful activities of others, and the Government agrees that self-incriminating information so provided will not be used against the defendant; further, such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

(Emphasis added.)

13. After imposing sentence for count I of the indictment, the district court stated:

> I would comment that my sentence would be greater than it is because of the distribution to minors and the fact of the weapons, all the weapons that were involved, including the dynamite, but for the fact that I give you credit for the cooperation that you gave. And, therefore, selected that point in the guidelines at somewhat of a mid-point range in the guidelines as appropriate in this case.

**1081**

quested the court to consider were: (1) the psychiatric report of Dr. Meeks; (2) the antisocial behavior and problematic childhood of Easterling; and (3) the other traumatic experiences endured by defendant. Prior to imposing sentence, the court expressly stated it had taken into consideration "the nature and circumstances of the offense and the history and characteristics of the Defendant." The district court's sentence was within the recommended sentencing range provided by the guidelines, and is well supported by the record. Therefore, we defer to the district court in its apportionment of the mitigating circumstances in imposing defendant's sentence.

█ In the present case, although not raised by the parties, we note that the district court failed to comply with Fed.R. Crim.P. 32(c)(3)(D), which provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. *A written record of such finding and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.*

(Emphasis added.)

At the second sentencing hearing, defendant's counsel made several objections to matters in the presentence report.[14] First, counsel objected to the number of weapons impliedly possessed by Mr. Easterling. Second, an objection was made to the utilization of information obtained from co-defendant, Lisa Thornton. Third, defense counsel objected to the calculation of the amount of drugs involved. We are satisfied that the court correctly resolved these disputed matters on the record or other-

wise indicated the disputed fact would not be relied upon in sentencing. Therefore, the proper remedy is to remand to the district court for the ministerial task of attaching its determinations regarding the disputed matters to the presentence report. *United States v. Wach*, 907 F.2d 1038, 1041 (10th Cir.1990) (citing *United States v. Gattas*, 862 F.2d 1432 (10th Cir.1988)).

CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's decision, and REMAND for the ministerial task of appending its determinations regarding the disputed matters in the presentence report.

---

14. Defense counsel had previously filed a letter listing his objections as required by local rule. This letter was entered as an exhibit at the sentencing hearing held December 18, 1989.