**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lewis Aaron COOK, Defendant–
Appellant.**

**No. 90–5080.**

United States Court of Appeals,
Tenth Circuit.

Nov. 5, 1991.

Jeffrey D. Fischer of Tulsa, Okl., for defendant-appellant.

James L. Swartz, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before LOGAN, SEYMOUR and ALDISERT,* Circuit Judges.

SEYMOUR, Circuit Judge.

Lewis Aaron Cook was convicted by a jury of two counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988), and of maintaining a place for the purpose of distributing controlled substances in violation of 21 U.S.C. § 856(a) (1988). He was sentenced to twenty years and ten months. Mr. Cook appeals both his conviction and sentence, citing numerous errors below. We affirm.

In July 1989, the Tulsa Police Department investigated Mr. Cook's involvement with drugs. On July 25, Officer Mark McCrory of the Tulsa Police initiated a controlled drug buy from Mr. Cook by a confidential informant. Immediately thereafter, Officer McCrory obtained a search warrant for Mr. Cook's apartment. The police searched his apartment that evening and arrested and charged him with state narcotics violations. He was released on bond pending a preliminary hearing in state court scheduled for August 24. On August 21, the police again searched Mr. Cook's residence, arrested him along with Yvonne Cross, and charged him with additional state narcotics offenses. Pursuant to conversations between Officer McCrory, Officer Mark Siebert of the Federal Bureau of Alcohol, Tobacco and Firearms, and the United States Attorney's Office, a federal investigation was initiated. Based on the drug trafficking underlying the state charges, Mr. Cook was indicted on September 6, and charged with federal narcotics violations. On September 8, Mr. Cook, out

on bond again, was arrested in his car along with Ruth Ann Zachary and Patricia Swimp by federal and state law enforcement personnel. His state charges were dismissed later that month over his objection.

I.

Mr. Cook first argues that the dismissal of his state charges and the subsequent prosecution of this case in federal court violate the Due Process and Equal Protection Clauses of the United States Constitution. He contends that he was denied due process when his prosecution under an applicable federal statute subjected him to a harsher penalty than prosecution under the applicable state statute would have. He also contends that the federal prosecution denied him equal protection because the government prosecuted Ms. Zachary for the same conduct in state court, even though she was arrested along with Mr. Cook on September 8.

■ We recently held that a defendant's due process rights are not violated by the federal government's decision to prosecute under a federal, rather than state, statute, notwithstanding the harsher penalties. *United States v. Andersen,* 940 F.2d 593, 596 (10th Cir.1991); *accord United States v. Mills,* 925 F.2d 455, 461 (D.C.Cir.1991). Mr. Cook has made no showing of prosecutorial vindictiveness, *see United States v. Goodwin,* 457 U.S. 368, 380–81 & n. 12, 102 S.Ct. 2485, 2492 & n. 12, 73 L.Ed.2d 74 (1982), or arbitrary classification based on an unjustifiable standard such as sex, race, or religion, *see Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). We therefore conclude that his due process rights were not violated.

■ We likewise find no merit in Mr. Cook's argument that his Fourteenth Amendment right to equal protection was violated by the decision to prosecute him, and not Ms. Zachary, under a federal stat-

---

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for   the Third Circuit, sitting by designation.

ute. Absent a showing of discriminatory purpose and effect, Mr. Cook does not state an equal protection claim. *Wayte v. United States*, 470 U.S. 598, 608 & n. 10, 105 S.Ct. 1524, 1531 & n. 10, 84 L.Ed.2d 547 (1985); *United States v. Brown*, 859 F.2d 974, 977 (D.C.Cir.1988). The difference in treatment between Mr. Cook and Ms. Zachary can be explained by his more extensive participation in cocaine trafficking. Our review of the record indicates that Ms. Zachary's participation was limited to throwing the cocaine out the car window when Mr. Cook handed it to her and ordered her to do so. Numerous officers identified Mr. Cook as a "major," "high ranking" cocaine trafficker. Rec., vol. II, at 15–16. Because the prosecutor did not discriminate between Ms. Zachary and Mr. Cook on the basis of an unconstitutional distinction, *see United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979); *Brown*, 859 F.2d at 977, the prosecution of Mr. Cook under the federal statute does not offend the Equal Protection Clause.

## II.

Mr. Cook next challenges the sufficiency of the affidavit in support of the search warrant issued on July 25, alleging that it contained insufficient facts to sustain a probable cause determination. Specifically, he argues that the failure of the affiant, Officer McCrory, to test the substance bought by the confidential informant is fatal to the affidavit's sufficiency.

When reviewing the validity of a search warrant, we must determine whether, under the totality of the circumstances presented in the affidavit, the magistrate had a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Parrish*, 925 F.2d 1293, 1296 (10th Cir.1991). Officer McCrory's affidavit indicates that he had been watching Mr. Cook's residence for approximately seven days prior to the search. McCrory noticed considerably more activity at the apartment during the night than he observed during the day. The affidavit states that McCrory was contacted by a man who said he knew of an apartment that was used as a place to sell cocaine and that he had seen several people purchase cocaine at this location. This confidential informant directed Officer McCrory to Mr. Cook's apartment, which McCrory recognized as one about which he and other officers had received information concerning cocaine transactions. The confidential informant offered to participate in a controlled buy of cocaine at the apartment. Officer McCrory searched the informant for money and drugs, and upon ascertaining that he had neither, gave him twenty dollars and watched him enter Mr. Cook's apartment. Upon the confidential informant's return, Officer McCrory again searched him for money and drugs. Officer McCrory did not find the twenty dollars, but he did find a white rock that appeared to be cocaine. The confidential informant reported that he saw more white rocks in the apartment that appeared to be cocaine, and stated that the occupants of the apartment told him he could return to buy cocaine at any time. The affidavit also stated that Officer McCrory had been trained to recognize controlled substances at the Tulsa Police Academy and the Drug Enforcement Agency's Basic School of Narcotic Investigation. Finally, the affidavit indicated that Officer McCrory had made approximately forty arrests for offenses involving cocaine.

Based on the totality of the circumstances, we conclude that substantial grounds existed for believing that cocaine could be found in Mr. Cook's apartment. Although Officer McCrory did not conduct a field test on the substance that the confidential informant brought to him from Mr. Cook's apartment, he had been trained to recognize cocaine and had been personally involved in numerous cocaine arrests. Moreover, Officer McCrory was able to control and observe the circumstances under which the confidential informant obtained the substance, and he had the benefit of the informant's opinion that the substance was cocaine. A magistrate is enti-

tled to rely on the expert opinions of officers when supporting factual information is supplied in the affidavit. *See United States v. Medlin,* 798 F.2d 407, 409 (10th Cir.1986) ("Courts frequently have relied on the expert opinion of officers in determining where contraband may be kept."); *United States v. Wood,* 695 F.2d 459, 464 (10th Cir.1982); *cf. United States v. Castillo,* 866 F.2d 1071, 1080 (9th Cir.1988) (expertise of trained narcotics officer to be considered in determining necessity of warrantless search based on exigency). Given Officer McCrory's experience and training, along with the controlled circumstances surrounding the buy, there was a substantial basis for concluding that the substance was cocaine and that more would be found in Mr. Cook's apartment. To require chemical testing of the cocaine prior to the issuance of a search warrant under the circumstances present in this case would be to ignore the Supreme Court's admonition that we " 'not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than common sense, manner.' " *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

### III.

Mr. Cook next contends that the testimony of co-defendant Yvonne Cross, who had pled guilty, was inherently contradictory, and that the trial court therefore erred in admitting it. Mr. Cook had supplied cocaine to Ms. Cross with whom he had been living for about a month prior to their arrest. She served as a lookout while Mr. Cook dealt cocaine out of his apartment. Mr. Cook once had her test cocaine he purchased for resale. As part of her plea bargain, Ms. Cross agreed to cooperate with the government and to testify against Mr. Cook. When called to the stand, however, she initially refused to testify against him and then did so only grudgingly and under threat of contempt. On cross-examination, she maintained that her prior testimony had been a lie and that she felt pressured by the government. On redirect, Ms. Cross again recanted her initial testimony. The district court denied Mr. Cook's motion to strike Ms. Cross' testimony.

■ We may reverse an evidentiary ruling only if we find that the district court abused its discretion. *United States v. Temple,* 862 F.2d 821, 822 (10th Cir.1988). Under Rule 601 of the Federal Rules of Evidence, "every person is competent to be a witness except as otherwise provided in these rules." Mr. Cook cites nothing in support of his contention that a witness who gives contradictory testimony is incompetent to testify. Moreover, we have recently refused to characterize as incompetent a witness whose testimony was inconsistent. *United States v. Bedonie,* 913 F.2d 782, 799 (10th Cir.1990) (pointing to the regressive nature of an evidentiary analysis that fuses credibility with competency), *cert. denied,* —— U.S. ——, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991). "Rule 601 represents the culmination of the modern trend which has converted questions of competency into questions of credibility while 'steadily moving towards a realization that judicial determination of the question of whether a witness should be heard at all should be abrogated in favor of hearing the testimony for what it is worth.' " 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 601[05], at 601–40 (1991) (quoting Comment, *Witnesses Under Article VI of the Proposed Federal Rules of Evidence,* 15 Wayne L.Rev. 1236, 1250 (1969)). In *Bedonie,* we recognized that the evolution of the law in the area of witness competency has resulted in federal rules that deem virtually all persons competent as long as they have personal knowledge of the facts about which they testify. 913 F.2d at 799.

■ Although Ms. Cross' testimony was contradictory at times, it purported to relate to circumstances within her personal knowledge. And while the testimony of a drug abuser may be suspect for a number of reasons, drug abuse alone does not render a witness incompetent. *See United States v. Smith,* 692 F.2d 658, 660–61 (10th Cir.1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *United States v. Jackson,* 576 F.2d 46, 48 (5th

Cir.1978) (drug use goes to credibility not competency). It was thus properly left to the jury to determine which version of the facts Ms. Cross recounted was true, or to reject her testimony as entirely incredible. *See Bedonie,* 913 F.2d at 801. We therefore conclude that the district court did not abuse its discretion by admitting the testimony of Ms. Cross and by allowing the jury to determine her credibility.

## IV.

◼ We find no merit in Mr. Cook's argument that the district court committed reversible error when it refused his request for special instructions with regard to the testimony of Ms. Cross and Ms. Swimp. We review the jury instructions in light of the record as a whole to determine whether they provided the jury with the requisite understanding of the issues presented at trial and the legal standards applicable to those issues. *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1271 (10th Cir.1988). Mr. Cook first challenges the court's refusal to charge the jury with an instruction pertaining to "reluctant witnesses." Mr. Cook does not develop his "reluctant witness" instruction argument in his brief, nor did he suggest to the district court any language for such an instruction. Both Ms. Cross and Ms. Swimp testified and ultimately answered all questions asked of them, although both witnesses were, at times, less than cooperative. We conclude that the district court did not commit reversible error in refusing a "reluctant witness" instruction.

Mr. Cook next argues that the district court's refusal to instruct the jury about the particular infirmities of a drug addict's testimony denied him a fair trial. The transcript of the charging conference reveals that the government objected to the portion of Mr. Cook's proposed instructions that read:

"An addict has a constant need for supply of drugs and for money to support his and her habit and also may have abnormal fear of imprisonment in which his or her supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind."

Rec., vol. VI, at 544.

◼ While "[a]s a general rule, prudence dictates the giving of an addict instruction whenever the prosecution has relied upon the testimony of a narcotics addict," whether refusal to so instruct is reversible error depends on the particular facts of each case. *Smith,* 692 F.2d at 661. In *Smith,* the district court declined to give an instruction containing essentially the same language proffered by Mr. Cook where the government offered the testimony of an informer-addict. *Id.* at 659–60. Although we pointed to the desirability of giving such an instruction when the witness was a drug abuser, we held that the court did not err in its refusal because it gave instructions concerning accomplice, immune-informant, and felon testimony, along with a general credibility instruction. *Id.* at 661. In addition, we noted that the witness' addiction was explored extensively at trial. *Id.* Here, the district court gave a general credibility instruction that stated:

"In deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may disbelieve all or any part of any witness' testimony. In making that decision, you may take into account a number of factors including the following:

1. Was the witness able to see, or hear, or know the things about which that witness testified?

2. How well was the witness able to recall and describe those things?

3. What was the witness' manner while testifying?

4. Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case? The testimony of a witness who provides evidence against a defendant for personal advantage must be considered with great care. You must decide whether the credibility of the witness' testimony was affected by his personal interest.

5. How reasonable was the witness' testimony in light of all the evidence in the case?

6. Was the witness' testimony contradicted by what that witness had said or done at another time, or by the testimony of other witnesses, or by other evidence? In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether the contradiction concerns an important fact or only a small detail.

7. Was the witness's testimony bolstered by the fact he or she had said essentially the same thing on more than one occasion? If so, it may be reason for you to believe the testimony of that witness.

"These are some of the factors you may consider in deciding whether to believe testimony.

"The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other.

"All of these are matters for you to consider in finding the facts."

Rec., vol. I, doc. 37 at 8–9. The jury received an additional instruction relating to the testimony of Ms. Swimp:

"The testimony of an admitted perjurer should always be considered with caution and weighed with great care."

*Id.* at 10.

▮▮▮ Under the circumstances of this case, we conclude that the failure to give

the addict instruction proffered by Mr. Cook was not reversible error. The drug abuse of both Ms. Cross and Ms. Swimp was revealed to the jury, and the district court gave a general credibility instruction alerting the jury to the potential for untrue testimony to gain personal advantage. *See Smith*, 692 F.2d at 661. The jury was therefore alerted to the possible weaknesses of the testimony in question.[1] In assessing the credibility of Ms. Cross and Ms. Swimp, the jury may have considered the direct evidence gathered during Mr. Cook's arrests that corroborated her accounts. *See Virgin Islands v. Hendricks*, 476 F.2d 776, 779 (3d Cir.1973); *United States v. Collins*, 472 F.2d 1017, 1018–19 (5th Cir. 1972), *cert. denied*, 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973).

### V.

Mr. Cook next contends that the district court erred in adopting the probation officer's estimate of the quantity of drugs involved in his offense. Although he admits it is proper under the Sentencing Guidelines for the court to estimate the amount of cocaine attributable to his activities, *see United States v. Easterling*, 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *United States v. Havens*, 910 F.2d 703, 705 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991), he argues that it was error to base this estimation on the testimony of Ms. Cross, because of her lack of credibility.

▮▮▮ The government must prove the drug quantity by a preponderance of the evidence. *See Easterling*, 921 F.2d at 1077; *United States v. Reid*, 911 F.2d

---

1. It is apparent from Mr. Cook's argument to the district court and on appeal that he was primarily concerned with the witnesses' ability to comprehend events while they were impaired. However, the language of his proffered instruction, and of the instructions discussed in the cases he cites, *see Government of Virgin Islands v. Hendricks*, 476 F.2d 776, 780 (3rd Cir.1973); *United States v. Kinnard*, 465 F.2d 566, 571 (D.C.Cir.1972); *United States v. Griffin*, 382 F.2d 823, 828–29 (6th Cir.1967), predicates a drug abuser's untrustworthiness on her need to continue her habit. The cases he relies on also are distinguishable because in each instance the addict-witness was a paid informant.

1456, 1462 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). We review this determination under a clearly erroneous standard, and we will not disturb it unless it has no support in the record, or unless after reviewing all the evidence we are firmly convinced that an error has been made. *Easterling,* 921 F.2d at 1077; *see United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). We defer to the district court when reviewing the credibility of witnesses on whose testimony it relies in making its factual findings. 18 U.S.C. § 3742(e) (1988); *see United States v. Florentino,* 922 F.2d 1443, 1445 (10th Cir.1990) (quoting 18 U.S.C. § 3742(e)). We have held that the use of estimates is permissible only if the information underlying the estimates possesses a minimum indicia of trustworthiness. *Easterling,* 921 F.2d at 1077.

■ The probation officer testified at the sentencing hearing that he relied on information provided by Ms. Cross on three different occasions to determine that Mr. Cook sold between $1000–$2000 worth of cocaine daily.[2] Ms. Cross' testimony in this regard was consistent throughout the proceedings. Moreover, she previously had relayed the same information in an interview with the Assistant United States Attorney, and had attested to the veracity of her presentence report, containing the same figures. Ms. Cross was quite familiar with Mr. Cook's drug trafficking. We conclude that the district court's factual determination is supported by the record and that the information upon which the court relied contains sufficient indicia of reliability. *See United States v. Frondle,* 918 F.2d 62, 64–65 (8th Cir.1990) (rejecting argument that testimony of co-defendant government witness was insufficient evidence), *cert. denied,* —— U.S. ——, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991); *United States v. Phillippi,* 911 F.2d 149, 151 n. 3 (8th Cir.1990) (same), *cert. denied,* —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991); *cf. Reid,* 911 F.2d at 1459–62 (district court's reliance on coconspirators estimate of cocaine quantity was proper); *Easterling,* 921 F.2d at 1077–78 (proper for district court to rely on information contained in interview of buyers of defendant's cocaine to estimate drug quantity); *United States v. Ross,* 920 F.2d 1530, 1538 (10th Cir.1990) (proper to rely on financial record of cocaine sales partially corroborated by buyers).

## VI.

■ Finally, Mr. Cook argues that the district court erred in relying on the testimony of Ms. Swimp to enhance his base offense level for obstruction of justice. We review a court's decision to enhance a sentence for obstruction of justice for clear error when the issue raised concerns a determination of fact. *See United States v. McCann,* 940 F.2d 1352, 1360 (10th Cir. 1991); *United States v. Urbanek,* 930 F.2d 1512, 1514 (10th Cir.1991). Enhancement is warranted if the defendant attempts "to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." United States Sentencing Comm'n Guidelines Manual § 3C1.1 (1990). Application Note 3(d) to § 3C1.1 lists as an example of obstructing justice throwing away a controlled substance during the course of an arrest. *Id.* Ms. Swimp testified at trial that as the police were attempting to overtake Mr. Cook's car, he handed a bottle to Ms. Zachary and ordered her to throw it out the window, which she did. The bottle was later retrieved by the police and found to contain cocaine. This activity indisputably amounts to an obstruction of justice

---

**2.** The probation officer used the minimum estimation of $1000 and multiplied it by 25, the number of days Ms. Cross had lived with Mr. Cook and had aided him in his cocaine trafficking. By estimating that each crack cocaine transaction cost $30, the probation officer arrived at a base level of 34. The officer also testified that he used as a measuring stick the amount of cash seized from Mr. Cook during his three arrests, which was approximately $2,000. These are appropriate methods by which to estimate the magnitude of Mr. Cook's cocaine business. *See* United States Sentencing Comm'n Guidelines Manual § 2D1.4, Application Note 2 (1990).

under the Guidelines. Mr. Cook argues, however, that this factual determination was not supported by the requisite indicia of reliability because Ms. Swimp should not have been believed. As we stated previously, we accord considerable deference to the district court's credibility determinations in sentencing proceedings. In this instance, the court chose to believe Ms. Swimp's narrative. The court's enhancement decision was supported by the record and was not clearly erroneous.

The judgment of the district court is AFFIRMED.