989 F.2d 508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry G. BAILEY, Jr., Defendant-Appellant.
 Nos. 92-3308, 92-3309.
 United States Court of Appeals, Tenth Circuit.
 March 10, 1993.
 
 Before BALDOCK, McWILLIAMS and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 Defendant pleaded guilty to four counts of bank robbery, 18 U.S.C. § 2113(a), and was sentenced to 110 months imprisonment. Defendant appeals his sentence, asserting that the district court erred in denying his request for downward departure due to his diminished capacity and vulnerability to in-prison victimization. U.S.S.G. § 5K2.0. Defendant also appeals the district court's enhancement of his offense level for willful obstruction of justice. U.S.S.G. § 3C1.1
 
 
 2
 Defendant was initially arrested for robbing the Union National Bank in Wichita, Kansas. As a condition of his bond, Defendant was ordered to reside at the Halfway House for Adults in Wichita, Kansas. Defendant, fearing incarceration, fled from the halfway house and eventually fled to the State of Washington. While in Washington, Defendant robbed three additional banks before he was apprehended.
 
 
 3
 At the sentencing hearing, the court determined that downward departure in this case would be inappropriate, stating:
 
 
 4
 Now going to objection number 12, in which the defendant objects that here are two factors or a combination of the two mentioned in the presentence report that warrant downward departure, and the cases that are cited. The court does find that this--these offenses are violent offenses. Also the court has considered 5H1.3 and 5H1.4, and the physical characteristics of the defendant will be addressed by the prison authorities, and prior criminal history of the defendant shows a need for incarceration to protect the public, and I have considered the objections both singularly and in combination, both of the objections by the defendant for purpose of a downward departure, and assuming that the basis for the downward departure is appropriate to be considered by the court as expressed by the defendant, the court does not believe a downward departure would be appropriate under all of the circumstance, considering the report made, the presentence report made, the psychological reports, the history of the defendant, criminal history of the defendant, and the arguments of counsel and the presentation of the defendant personally.
 
 
 5
 Sentencing Tr. at 49-50. As to the issue of whether Defendant's sentence should be enhanced for obstruction of justice, the court found:
 
 
 6
 The psychological reports in the court's mind clearly reflect that the defendant voluntarily and intentionally absconded while he was on bond, and I'm not really specifically referring to his subsequent acts of the three bank robberies subsequent to that. I am referring specifically to the time that he voluntarily left the federal halfway house here in Wichita, Kansas, while he was a fugitive. He knew better, and then absconding and going to another state, and of course, the events that occurred there that in part we are here today. But the court does find the defendant voluntarily did so and therefore the enhancement is appropriate and denies the requested objection by the defense counsel.
 
 
 7
 Id. at 43-44.
 
 
 8
 Defendant first contends that the court erred in refusing Defendant's request for downward departure because the court erroneously believed that U.S.S.G. § 5K2.13 negates the court's authority to depart under U.S.S.G. § 5K2.0 for diminished capacity when the offense involves violence.[1] We hold that the court's refusal to depart was not based on its belief that it lacked the authority to do so. Because we dispose of the issue on this ground, we make no comment on whether U.S.S.G. § 5K2.13 precludes the district court from considering diminished capacity when the offense involves violence.
 
 
 9
 The record clearly reflects that the court, in refusing Defendant's request for downward departure based on diminished capacity and vulnerability to in-prison victimization, believed that it possessed the authority to depart downward on these bases. While ruling on this issue at the sentencing hearing, the court stated in pertinent part, "... and assuming that the basis for the downward departure is appropriate to be considered by the court as expressed by the defendant, the court does not believe a downward departure would be appropriate under all of the circumstances...." (emphasis added). Because the court's discretionary refusal to depart downward was based on grounds other than the erroneous belief that it lacked the authority to depart, we have no jurisdiction under 18 U.S.C. § 3742 to review the court's refusal. United States v. Davis, 900 F.2d 1524, 1529-30 (10th Cir.), cert. denied, 111 S.Ct. 155 (1990).
 
 
 10
 Defendant also contends that the district court erred in enhancing his offense level for willful obstruction of justice under U.S.S.G. § 3C1.1. Defendant asserts that the court erred because it failed to make the necessary finding that Defendant fled the halfway house with the specific intent to obstruct the administration of justice. We have jurisdiction under 18 U.S.C. § 3742.
 
 
 11
 A defendant subject to an obstruction of justice enhancement under U.S.S.G. § 3C1.1 must have acted with a specific mens rea--i.e., the defendant must have consciously acted with the purpose of obstructing justice. United States v. Gardiner, 931 F.2d 33, 35 (10th Cir.1991). If a defendant objects to the obstruction of justice enhancement, the district court must make independent factual findings establishing a willful impediment to justice. United States v. Dunnigan, 61 U.S.L.W. 4180, 4183 (U.S. Feb. 23, 1993). The district court's factual determinations are subject to a preponderance of the evidence standard, and we review for clear error. United States v. Easterling, 921 F.2d 1073, 1077 (10th Cir.1990), cert. denied, 111 S.Ct. 2066 (1991). We review the court's legal interpretations of the Sentencing Guidelines de novo. United States v. Agbai, 930 F.2d 1447, 1448 (10th Cir.1991).
 
 
 12
 First, contrary to Defendant's assertion, the record reflects that the district court did make the necessary factual finding that Defendant fled the halfway house with the specific intent to obstruct justice. In enhancing Defendant's sentence, the court stated in part, "the defendant voluntarily and intentionally absconded while he was on bond.... I am referring specifically to the time that he voluntarily left the federal halfway house here in Wichita, Kansas, while he was a fugitive." (emphasis added). By definition, "abscond" means "[t]o hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process. " Black's Law Dictionary 3 (5th ed. 1983) (emphasis added). The district court's use of the distinct term "abscond" clearly reflects that the court made the necessary determination that Defendant fled the halfway house with the specific intention of avoiding legal process, or, in other words, with the intent to obstruct justice.
 
 
 13
 Finally, we hold that the district court's determination that Defendant possessed the mental capacity to act willfully when he fled the halfway house is not clearly erroneous. An act is done "willfully" if done intentionally and with a bad purpose. Screws v. United States, 325 U.S. 91, 101 (1945).
 
 
 14
 Although Defendant presented evidence that he suffers from cerebral dysfunction as a result of a head injury he sustained in a 1981 car accident, the record supports the court's conclusion that Defendant willfully obstructed justice when he fled the halfway house. A neuropsychologist who evaluated Defendant three months prior to Defendant's fleeing the halfway house concluded that Defendant was sane and could discriminate right from wrong. Further, Defendant's own statements are revealing. At the sentencing hearing, Defendant stated, "I know I disrespected what she [counsel for Defendant] was doing for me when I left the halfway house, and for that reason I am so very sorry ... but my fears of prison overpowered my common sense." Sentencing Tr. at 39. These statements support the court's conclusion that Defendant understood what he was doing when he fled the halfway house, and that he also understood that what he was doing was wrong.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Section 5K2.13 authorizes the court, within its discretion, to depart downward for diminished mental capacity if the offense committed is non-violent. Section 5K2.0 is the general provision that gives the court authority to consider aggravating or mitigating circumstances in granting a downward departure