**GOVERNMENT OF THE VIRGIN ISLANDS**
v.
**VALDEMAR HENDRICKS, Appellant**

No. 72-1911

United States Court of Appeals

Third Circuit

Argued January 31, 1973

Filed April 3, 1973

597

JOHN B. NICHOLS, ESQ. (NICHOLS & SILVERLIGHT), Christiansted, St. Croix, V.I., *counsel for appellant*

JULIO A. BRADY, ESQ., Assistant United States Attorney, Christiansted, St. Croix, V.I., *counsel for appellee*

Before VAN DUSEN, ROSENN and HUNTER, *Circuit Judges*

## OPINION OF THE COURT

VAN DUSEN, *Circuit Judge*

Defendant Hendricks was convicted of both of two counts of selling heroin in violation of 19 V.I.C. § 604(a) and was sentenced to ten-to-fifteen years on each count, to be served consecutively. He asserts here that the district court erred in regard to jury selection, jury instructions, and sentencing. We affirm.

The circumstances of the two sales are essentially the same. The police employed one Carlos Encarnacion to pur-

chase the drugs. According to the testimony of the police and Encarnacion, on October 14, 1971, and again on October 19, 1971, the police searched Encarnacion, gave him money, and told him to buy drugs from defendant. Encarnacion sought out defendant and, as he stated, purchased heroin from him. Then Encarnacion returned to the police, who searched him and found in his possession heroin but no money. On both occasions the police officers had trailed Encarnacion. On October 14 they witnessed an exchange between Encarnacion and defendant. On October 19, however, they saw only that Encarnacion and defendant entered an apartment house together; the police officers did not observe the alleged sale itself.

Encarnacion was similarly employed to obtain evidence against a number of other suspected drug pushers. Four of these individuals were brought to trial before defendant Hendricks was, and, as a result, the jury array from which defendant's jury was selected contained jurors who had sat on some of such earlier cases and had heard Encarnacion testify during such cases. Defendant challenged the entire array,[1] and, after that challenge was rejected, requested that the district court ask certain questions designed to elicit whether jurors who had sat on such earlier cases had formed an impression about the credibility of Encarnacion or of the police officers involved in defendant's case.[2] The district court declined to ask the requested questions, but did determine which jurors had sat on such earlier cases and did inquire of these persons whether they were able to confine themselves solely to the evidence which

---

[1] Motion of February 9, 1972.
[2] Supplemental Proposed Questions to the Jury on Voir Dire, questions Nos. 28–33, filed February 9, 1972.

would be presented.[3] The district court denied defendant's motion to strike such jurors for cause.[4]

■ While we acknowledge that the credibility of Encarnacion's testimony was crucial to this case, we adhere to the view that the mere fact that a juror has sat on a prior case involving similar issues and some of the same witnesses does not, absent some showing of resulting prejudice, disqualify the juror. See Government of the Virgin Islands v. Williams, 476 F.2d 771 (3d Cir. Nos. 72-1374 & 1389 1973). We note that of the nine jurors who had sat on such earlier cases, eight had sat on one such case and one had sat on two such cases. Consequently, we reject defendant's claim that the district court erred in the above-mentioned rulings.

Defendant requested two instructions involving the credibility of Encarnacion, one relating to his being a drug ad-

---

[3] The judge addressed the jury as a group. At various times during the court's questioning of the group, jurors responded. When the district court asked the jurors if they would be prejudiced because the defendant was charged with a narcotics violation, one juror raised his hand and, when questioned, said he would be prejudiced in such a case. When the jurors were asked if they knew Encarnacion, one raised her hand and stated that she was his cousin.

The district court began its discussion of the earlier cases in which Encarnacion had testified by asking the jurors who sat on Government of the Virgin Islands v. Ventura to identify themselves. The court then asked, as a group, the five who raised their hands whether they would be able to "judge the credibility of the witnesses entirely upon the evidence adduced at this trial?" Transcript of Voir Dire at 17. No juror indicated any inability to do so. The district court repeated this procedure for each of the other three such cases. Transcript of voir dire at 17–22. The district court then addressed all such jurors together, as follows:

"You heard the testimony of the witnesses in those cases and you obviously formed some impression as to their credibility in those cases; would you be able to form an opinion as to the credibility of those same witnesses in this case based entirely upon their testimony in this case even to the point where you would change your opinion as to their credibility which you had in the prior case?

"(No response.)

"Is there anyone who would not be able to do so?

"(No response.)"

Id. at 24.

In light of these extended inquiries, we believe that the voir dire was adequate.

We note that, under appropriate circumstances, it may be desirable for the district court, in conducting a voir dire examination of jurors, to require an audible response to important questions.

[4] Id. at 26–27. Defendant apparently exhausted all peremptory challenges.

dict[5] and the other to his being paid by the Government.[6] The district court refused to give the former on the ground that there was no evidence in the record to show that Encarnacion was an addict as of the time of the trial, February 15, 1972. The district court did give the latter, but with significant modification.[7] Defendant took exception to the refusal to give the proffered instruction on addicts,[8] but he did not make any objection to the instructions eventually given by the court.[9]

It is undisputed that, inter alia, Encarnacion was an addict at the time he allegedly bought drugs from defendant,[10] that he was to be paid $2,000. by the Government for obtaining evidence and then testifying against from 10 to 20 persons, that he had been convicted of forgery and was still subject to sentencing for this conviction, and that he had pending against him a number of felony charges. The questions before this court are whether, under these circumstances, the district court should have given defendant's instruction that "a drug addict is inherently a perjurer" and, if not, whether the district court's instructions were plain error, see F. R. Crim. P. 30.

---

[5] "I instruct you that a drug addict is inherently a perjurer where his own interests are concerned and therefore the testimony of a drug addict should be carefully scrutinized and received with caution." Defendant's Proposed Jury Instructions, filed January 7, 1972.

[6] "I instruct you that the testimony of a paid informer must be scrutinized with care and received with caution. This is because there is a serious question of credibility inherent in the use of such a witness by the government and his usefulness is dependent wholly upon his ability to make out a case in favor of the government." Id.

[7] "We have a rule that the testimony of an informer must be scrutinized with care and received with caution. And it is within your exclusive province to determine the weight to be given the testimony of an informer." N. T. 2.124. The court deleted the second sentence of defendant's proposed instruction quoted in the preceding footnote because the court found that Encarnacion was to be paid whether or not convictions were obtained.

[8] N. T. 2.91.

[9] N. T. 2.130.

[10] Encarnacion himself so testified. N. T. 2.35–.38. At N. T. 2.91, the district court stated, "The Court recognizes that the informant was a drug addict prior to November, 1971. . . ."

■ Defendant took this "inherently a perjurer" language from *Fletcher v. United States,* 158 F.2d 321, 322 (D.C. Cir. 1946). While the court in *Fletcher* was concerned with the reliability of an addict-informer, the court's decision was to allow such testimony but to require that a cautionary instruction be given. To suggest that the cautionary instruction should contain the words "inherently a perjurer" is to misread *Fletcher,* for such an instruction would in effect make the testimony incompetent altogether. The district court was correct in not giving the proposed instruction.

■ One recent case has held outright that it is plain error for a district court not to instruct the jury sua sponte about the unreliability of an addict-informer's testimony when that testimony is corroborated only in minor details.[11] *United States v. Griffin,* 382 F.2d 823 (6th Cir. 1967). *Griffin,* however, is easily distinguishable on its facts. In *Griffin* there were two co-defendants, Griffin and a woman. The woman made two sales to an addict-informer; Griffin was not present at the first sale and was only seen in the vicinity of the second. While there was corroboration by police officers as to the woman's guilt, only the word of the addict-informer connected Griffin with the crimes. In the present case, on the other hand, police witnessed one transaction and provided significant corroboration for Encarnacion's testimony about the other transaction, even though they did not witness the sale itself. Moreover, the district court did instruct the jury that because Encarnacion was an informer his testimony had to "be scrutinized with care and received with caution." In

---

[11] Another case, *United States v. Kinnard,* 465 F.2d 566 (D.C. Cir. 1972), disregarded defendants' failure to object to the instructions given, see *id.* at 583 (Adams, J., dissenting). However, the holding of *Kinnard* is that a trial court must give a cautionary instruction in these circumstances, *but only upon request.* Hence, the failure to give such an instruction could not be plain error.

these circumstances, we decline to hold that there was plain error.

We do not, however, mean to suggest that, if it is requested, a special cautionary instruction is not proper when a witness is in the Government's pay and either is an addict at the time of trial or was an addict at the time of the events concerning which testimony has been given. Similar scrutiny must be used in weighing the testimony of a present or former addict who recognizes, or may recognize, the possibility of being rewarded by the Government. Examples of possible rewards are the dropping of charges presently pending against the witness and the recommending of a lighter sentence for a crime of which the witness has already been convicted. An instruction would be appropriate whether or not it is shown that the Government intends to reward the witness. It would be especially useful when the testimony of such a witness is uncorroborated as to a material fact.

While the precise formulation of the instruction is up to the trial court,[12] it should set out the rationale for examining the testimony of such a witness with special caution. As United States v. Kinnard, 465 F.2d 566, 570–71 (D.C. Cir. 1972), points out, an addict-informer faces the immediate threat of being jailed and thereby kept from access to the drugs to which he is addicted, as well as the prospect of a long term prison sentence and possible retaliation from various persons in the drug trade. These factors substantially increase the danger that the addict-informer may color his testimony so as to place guilt on the defendant.

Defendant Hendricks' final contention is that the sentence he received—two consecutive terms of ten-to-fifteen years—was excessive. Although this is a very long

---

[12] See United States v. Bailey, 451 F.2d 181, 183–84 (3d Cir. 1971).

sentence, it is within the statutory limits, and, therefore, not subject to review here. Government of Virgin Islands v. Venzen, 424 F.2d 521 (3d Cir. 1970). See Gore v. United States, 357 U.S. 386, 393 (1958) ; United States v. Frank, 245 F.2d 284, 288 (3d Cir. 1957). Cf. generally ABA Project on Minimum Standards for Criminal Justice (Approved 1968), Standards Relating to Appellate Review of Sentences, including Appendix 3, pp. 86–90. We note, however, that defendant may apply under F. R. Crim. P. 35 for a reduction of sentence after the issuance of this court's mandate.

The March 10, 1972, judgment and commitment will be affirmed.