UNITED STATES of America

v.

Arthur HOPKINS et al.

Appeal of James DINKINS.

No. 74–2293.

United States Court of Appeals, Third Circuit.

Argued April 14, 1975.

Decided June 18, 1975.

Edward H. Weis, Asst. Defender, Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellants.

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Thomas J. McBride, Asst. U. S. Attys., Philadelphia, Pa., for U. S.

Before SEITZ, *Chief Judge,* and ROSENN and WEIS, *Circuit Judges.*

## OPINION OF THE COURT

ROSENN, *Circuit Judge.*

James Hargrove Dinkins was indicted for distribution of heroin and conspiracy to distribute heroin. He allegedly conspired with Arthur Hopkins, Alfred S. Fletcher, and James Reid to sell two "bundles" of heroin to a Government informant, Calvin Butler.[1] Midway through the Government's case-in-chief, the United States District Court for the Eastern District of Pennsylvania determined that sufficient independent evidence of Dinkins' participation in the alleged conspiracy had been adduced to permit the jury to consider with respect to Dinkins the hearsay declarations of his alleged coconspirators. The jury found Dinkins guilty on both the substantive and conspiracy counts. After denying Dinkins' motion for judgment of acquittal, the district court sentenced him on the substantive count to three years' imprisonment followed by a three-year special parole term. On the conspiracy count, the district court suspended sentence and placed Dinkins on probation for a five-year period running consecutively to the term of imprisonment imposed on the substantive count.

Dinkins makes the following contentions on appeal:

(1) The evidence on the substantive count, which consisted primarily of Butler's testimony, was insufficient since Butler was a paid informant, a drug addict with criminal charges outstanding against him, and his testimony was uncorroborated.

1. Hopkins and Fletcher were tried with Dinkins. Reid was a fugitive at the time of trial.

(2) The district court committed plain error in failing to give certain jury instructions concerning Butler's unreliability which were not requested by Dinkins.

(3) The district court erred in permitting the hearsay declarations of Dinkins' alleged coconspirators to be admitted in evidence against him.

(4) When the challenged hearsay declarations are excluded, the record is insufficient to support the conspiracy conviction.

(5) Dinkins is entitled to a new trial on the substantive count because admission in evidence of the challenged hearsay declarations did not constitute harmless error.

We affirm Dinkins' conviction on the substantive count and reverse his conviction on the conspiracy count.

## I.

The Government's case rested primarily on the testimony of Calvin Butler, the informant. Butler's testimony was corroborated in part, however, by federal agents who kept him under surveillance immediately before and during the critical period of his alleged transaction with Dinkins.

On the evening in question, Butler was cooperating with federal agents in Philadelphia in an attempt to purchase heroin from Arthur Hopkins. Butler and Agent Bannister drove to the vicinity of 20th and York Streets, whereupon Butler alighted from the car. Although initially unsuccessful in locating Hopkins, Butler eventually encountered Alfred Fletcher, who agreed to telephone Hopkins. Fletcher departed to make his call and then returned, informing Butler that Hopkins was on his way. By this time, Agent Bannister had left. Butler therefore called him at his office and told him that Hopkins was coming.

Hopkins informed Butler when they met that he had distributed all his heroin among his workers, but that he knew where some heroin could be obtained. Butler, accompanied by James Reid who identified himself as an employee of Hopkins, was to go to 8th and Susquehanna Streets. Reid and Butler encountered Agent Bannister, who had returned posing as Butler's principal, at the corner of 21st and Boston Streets. Agent Bannister drove them to 8th and Susquehanna Streets, whereupon Butler and Reid entered Twardy's Bar.

Butler testified that Reid introduced him to appellant Dinkins. After discussing price with Dinkins for five bundles of heroin, Butler went outside to confer with Agent Bannister. Agent Bannister gave Butler $200 and instructed him to purchase only two bundles of heroin.

As Butler was returning to make the purchase, Agent Bannister observed Dinkins emerge from the bar. Agent Bannister testified:

Mr. Butler then approached Mr. Dinkins, and what appeared to be a short conversation ensued. Mr. Dinkins then sort of motioned Mr. Butler into the bar and proceeded to walk east on Susquehanna to 802 Susquehanna, which he entered at approximately 10:18. A few moments later I observed Mr. Dinkins exit 802 Susquehanna and reenter the bar.

According to Butler's testimony, he purchased two bundles of heroin from Dinkins. Immediately thereafter, Butler and Reid left the bar and rejoined Agent Bannister at his car, where Butler gave Bannister the heroin.

## II.

█ We are satisfied that the evidence, exclusive of the hearsay statements of alleged coconspirators, is sufficient to sustain Dinkins' conviction on the substantive count. We recognize that Butler was a heroin addict who may have been experiencing symptoms of withdrawal at the time of the transaction with Dinkins. We also are aware that Butler had criminal charges outstanding against him and was compensated for his services as an informant. The extent to which these factors derogated from Butler's credibility, however, was exhaustively developed in the testi-

mony. Moreover, Butler's testimony was corroborated in significant respects by federal agents. We consider especially significant the testimony of Agent Bannister concerning the interaction between Butler and Dinkins outside Twardy's Bar.

Had Dinkins requested a more extensive jury instruction on Butler's credibility, he might have been entitled to one. We are cognizant of the dangers inherent in the testimony of drug addicts, especially those who are paid informants and have criminal charges pending against them. In the present case, however, we believe that the district court did not commit plain error in failing to instruct the jury more specifically on the effect which Butler's status as a paid informant and drug addict with criminal charges pending might have had on his credibility.

The jury's attention was focused upon Butler's lack of reliability by lengthy cross-examination, both of Butler and of the federal agents who observed him. A comprehensive inquiry was made into the criminal charges against Butler and the payments for his services as an informant. The effect of Butler's addiction upon his perception was delved into, both generally and with respect to the evening on which the alleged transaction with Dinkins occurred. Against this backdrop, the district court instructed the jury concerning credibility:

> You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each

> witness is either supported or contradicted by other evidence in the case.

> \* \* \* \* \* \*

> Now, the testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant.

> \* \* \* \* \* \*

> Now, the testimony of a witness may be discredited or impeached by showing that the witness has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years. Prior conviction does not render a witness incompetent to testify, but is merely a circumstance which you may consider in determining the credibility of the witness. It is the province of the jury to determine the weight to be given to any prior conviction as impeachment.

In the absence of an objection, we consider these instructions adequate. *See Government of the Virgin Islands v. Hendricks,* 476 F.2d 776, 779 (3d Cir. 1973). They invited the jury's attention to the dangers lurking in Butler's testimony, in his credibility or lack of it, in his potential motivation to commit perjury or to tell the truth, and in the possibility that his recollection was faulty.

## III.

 Dinkins contends that certain hearsay declarations of his alleged coconspirators should not have been admitted into evidence against him. He further contends that, if these hearsay declarations are excluded, the record contains insufficient evidence to sustain his conspiracy conviction.

During the Government's case-in-chief, the district court ruled that sufficient evidence of Dinkins' participation in the alleged conspiracy had been adduced to

permit the hearsay declarations of Dinkins' alleged coconspirators to be considered by the jury. The district court apparently relied upon the informant Butler's prior signed statement used by Fletcher's defense counsel for purposes of impeachment. The statement related what Hopkins told Butler after informing him that he had parted with all his heroin:

> [Hopkins] suggested that [Reid] walk with me and asked Agent Bannister if he wanted to take him to another one of his spots to purchase the five bundles.

On redirect, counsel for the Government asked Butler whether his present recollection of the facts coincided with the foregoing statement. Butler responded that it did. Based on this affirmation of the statement, the district court held that a conspiracy had been made out as to Dinkins.

The hearsay declarations of an alleged coconspirator are inadmissible if no independent evidence links the defendant to the conspiracy. *Glasser v. United States,* 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Bey,* 437 F.2d 188, 190 (3d Cir. 1971). In the present case, the statement relied upon by the district court did not itself constitute substantive evidence since it was offered for impeachment purposes only. *See United States v. Vandersee,* 279 F.2d 176, 180 (3d Cir. 1960). Moreover, Butler's testimony on redirect, even if construed as an affirmation of his prior statement, does not support admission of the hearsay declarations against Dinkins since the statement itself is hearsay. The hearsay declaration of an alleged coconspirator cannot serve as independent evidence of participation in the conspiracy. *United States v. De Cavalcante,* 440 F.2d 1264, 1273 (3d Cir. 1971).

We have scoured this record for independent evidence linking Dinkins to the alleged conspiracy and have found not a trace. We therefore conclude that the district court erred in ruling that the hearsay declarations of Dinkins' alleged coconspirators were admissible against him.

Because these challenged hearsay declarations should have been excluded with respect to Dinkins, they cannot serve to sustain his conspiracy conviction. As noted above, the record, once purged of the hearsay declarations of alleged coconspirators, is devoid of probative evidence connecting Dinkins to the conspiracy. We recognize that, in the face of a guilty verdict, only "slight" evidence is required to link a particular defendant to an established conspiracy. *United States v. Kates,* 508 F.2d 308, 310 (3d Cir. 1975). Here, however, even this minimal burden has not been met by the Government. We therefore reverse Dinkins' conviction on the conspiracy count.

### IV.

 Dinkins' final contention is that he must be accorded a new trial on the substantive count because hearsay declarations of his alleged coconspirators were improperly admitted into evidence against him. Dinkins is not entitled to a new trial, however, if admission of the challenged hearsay declarations constituted harmless error beyond a reasonable doubt. *See Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). *See generally* Note, *The United States Courts of Appeals: 1973–1974 Term Criminal Law and Procedure,* 63 Geo.L.J. 325, 522, 589–91 (1974). Our inquiry therefore must focus upon the harmless or prejudicial nature of the error.

As we observed above, the Government's case against Dinkins was not overwhelming. The major issue was whether Dinkins was the person from whom the informant Butler purchased the heroin. On this issue the Government relied primarily upon the testimony of Butler, whose credibility had been drawn seriously into question. This testimony, however, was not without substantial corroboration by Agent Bannister, who maintained surveillance outside the bar in which the alleged heroin transaction occurred.

Against the strength or weakness of the Government's case we must weigh the impact which the improperly admit-

ted hearsay declarations may have had upon the jury's verdict. Dinkins brings to our attention only one instance of asserted prejudice.[2] On redirect examination, Agent Bannister recounted the conversation he had with Reid on the drive to Twardy's Bar.

Mr. Reid stated that Hopkins was angry because of the delays and I told Mr. Reid that I had been waiting earlier an hour-and-a-half for Mr. Hopkins to arrive. At that point Mr. Reid stated that Hopkins was a busy man and that was the way he was. Mr. Reid then stated that he would take us to another area to buy the five bundles. I then asked Mr. Reid where we had to go, and he stated, "Twardy's Bar at 8th and Susquehanna."

\* \* \* \* \* \*

I discussed the price with him. I stated I would like a better price than $100 a bundle, and he said this is the first time I would be dealing with him and he would see what he could do.

We are convinced that the hearsay declarations attributed to Reid by Agent Bannister were harmless beyond a reasonable doubt. Reid's declarations did not bear upon the critical issue whether Dinkins was the person from whom Butler allegedly purchased the heroin. In fact, the most that the jury could have gleaned from Reid's declarations is that a purchase of heroin was contemplated at Twardy's Bar. This, however, was persuasively established by other evidence.

As the Supreme Court held in *Schneble, supra,* improperly admitted declarations of an alleged coconspirator are harmless if

the "minds of an average jury" would not have found the [prosecution's] case significantly less persuasive had the [declarations] been excluded.

405 U.S. at 432, 92 S.Ct. at 1060, *quoting Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Because we perceive no "reasonable possibility" that Reid's declarations contributed to the jury's verdict, we sustain Dinkins' conviction on the substantive count. 405 U.S. at 432, 92 S.Ct. 1056, *citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment and sentence on the conspiracy count will be reversed with directions to enter a judgment of acquittal. The judgment and sentence on the substantive count will be affirmed.

---

2. Our examination of the record has not revealed other hearsay declarations of Dinkins' alleged coconspirators which were even colorably prejudicial.