

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2002

# USA v. Miles

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-4201

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Miles" (2002). *2002 Decisions.* Paper 725.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/725

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 00-4201

————

UNITED STATES OF AMERICA

v.

PHILLIP MILES,

Appellant

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 97-cr-00146)
District Judge: Hon.William J. Nealon

————

Argued September 24, 2002

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Filed: November 12, 2002)

Michael C. Kostelaba, Esq. (Argued)
630 North Main Street
Wilkes-Barre, PA 18705

    Counsel for Appellant

John J. McCann, Esq. (Argued)
Office of the United States Attorney
240 West Third Street
Suite 316
Williamsport, PA 17701

Counsel for Appellee

---

OPINION

---

COWEN, Circuit Judge

Phillip Miles appeals from the judgment of the United States District Court for the

Middle District of Pennsylvania entered on October 27, 2000 denying his motion pursuant

to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. We agree with the

District Court's conclusion that the failure of Miles's trial counsel either to request a

cautionary addict instruction or to object to or otherwise address the improper statements

made by the government during closing and rebuttal arguments did not rise to the level of

constitutionally ineffective assistance. We will therefore affirm.

I.

On the evening of June 5, 1997, Miles was a passenger in a car driven by Donald

Hayes on I-80 in Monroe County, Pennsylvania. The two individuals were traveling from

Paterson, New Jersey, to their hometown of Dillon, South Carolina. Pennsylvania State

Police Troopers Paul Semler and Sherry Palmer stopped the car for a traffic violation

shortly before midnight. Hayes consented to a search of the car. The search uncovered a

crack pipe on the driver's side of the car, a loaded .380 caliber handgun behind the glove

2

box, and approximately 215 grams of crack cocaine behind the plastic housing separating the trunk from the vehicle's frame and wheel wells.

A federal grand jury for the Middle District of Pennsylvania returned an indictment against Hayes and Miles charging the two individuals with three counts: (1) conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846; (2) possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii); and (3) knowingly carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). On October 6, 1997, pursuant to a plea agreement, Hayes pled guilty to the second count of the indictment. Judge Nealon accepted the plea and scheduled his sentencing for December 22, 1997. Hayes agreed to cooperate with the government by, among other things, providing truthful information regarding the drug run between New Jersey and South Carolina.

Miles was tried before Judge Nealon. John A. Bednarz, Jr., Esq., represented Miles, and Assistant United States Attorney Malachy Mannion, Esq., appeared on behalf of the government. In addition to other witnesses, both Hayes and Miles testified. The primary issue at trial was whether Miles knew that he and Hayes were transporting drugs. Hayes testified that he drove Miles, who carried the .380 caliber handgun, from South Carolina to New Jersey so that Miles could purchase crack cocaine. Miles, however, denied knowledge of any drugs. He said that he believed Hayes was merely visiting his mother in Paterson and that he accompanied him in order to see a "big city."

The prosecutor examined Hayes regarding his history of drug use. Hayes testified that he started using marijuana when he was fourteen years old and began to snort cocaine after he left the army in 1984. Hayes stated that he has been smoking crack cocaine for about ten or eleven years. He admitted that he used drugs in the weeks prior to the trip to Paterson. He further testified that he actually bought some crack cocaine from Miles immediately before they drove from Dillon to Paterson. According to Hayes, Miles asked Hayes to drive him to "New York," and Hayes agreed because he was angry with his wife and he was "going to get some crack out of it." App. at 182. Hayes also stated that he smoked some of the crack cocaine subsequently found in the car in order to test its quality.

Miles's trial counsel specifically cross-examined Hayes regarding his use of drugs. He asked several questions about how Hayes supported his crack cocaine habit. Hayes denied ever selling crack cocaine in order to purchase drugs, and he stated that he worked as a gravedigger in order to pay for drugs. He also admitted that he previously accompanied Lorenzo Bethay on a couple of drug runs to Paterson and New York in exchange for $70.00 and crack cocaine. Hayes said that he used the crack pipe found in the car on the night before he drove to Paterson. Miles's trial counsel further inquired into Hayes's asserted reasons for driving Miles to and from New Jersey. Hayes testified that he went with Miles because he was high. He explained that, "Well, within recently, I was starting to find myself getting high a lot." *Id.* at 228. Miles's trial counsel asked Hayes how much money he spent per day on crack cocaine, and Hayes was unable to give an amount. He did say that he could make enough money from digging graves "to get what I – what I want to get." *Id.*

4

Following the completion of testimony, the prosecutor offered the government's closing argument. Miles challenges a number of statements in this closing argument. On more than one occasion, the prosecutor compared Miles's testimony with the "absurd and ridiculous" excuse that a dog ate your homework. *Id.* at 440. The prosecutor also made a comparison between Hayes and Miles, concluding with a comment regarding Miles's unemployment.[1]

> The prosecutor further addressed the credibility of Hayes:
>
> [Hayes] pled guilty to his involvement in this case, but he's not the dealer, he's not capable of having this kind of money, he's not capable of having this quantity of drugs. Dealers don't usually smoke their own stuff.
>
> [Hayes] doesn't have the capability of doing any more than sucking that [crack cocaine] down his nostrils and driving other people there. Do you know what? In drug deals, you don't often know what's going on or where they've been . . . .

*Id.* at 442-43. He subsequently turned to Miles's claim on both direct and cross-examination that, even though he had pled guilty to a South Carolina gun charge, he did not commit this previous crime:

> And I would submit to you that the evidence shows that what Miles wants to do is he wants to reconstruct the facts of yesterday to meet his needs, today. He told you, he's on probation from his gun charge, he can't afford this charge, not only for his own problems, but for the problems it gives him on his other charge. The one, of course, that he didn't do, he pled guilty to. I could just see that Judge down there, during the plea, as Miles is saying, I didn't do it, but I'm going to plead guilty. I've never seen a Judge accept a guilty plea from anyone who doesn't admit that they, in fact, did it.

---

[1] Hayes had testified that he was unemployed.

*Id.* at 453.  The prosecutor also claimed as part of his closing argument that:

> . . . We do have an insider who's telling us that; that's Hayes.  Yes, he's
> getting something for his deal.  He pled guilty to one of the counts in the
> indictment, and he's hoping to get cooperation.  He pled guilty in front of that
> Judge sitting up there, and he'll be sentenced on December 22nd by that
> Judge sitting up there.  He heard his testimony, he'll know what weight to
> give it.

*Id.* at 454.

Miles's trial counsel then offered his closing argument.  In addition to addressing

Hayes's history of drug use, the trial counsel referred to the lack of any fingerprints on the

handgun and the drug bags, and he indicated that this absence was the result of coincidence,

bad luck, or deliberate removal.  The prosecutor responded in a rebuttal argument.  Miles

attacks the following assertion in the rebuttal:

> . . . Because we're not here to get a conviction.  That was never our purpose,
> we're not here to get a conviction.  We don't need convictions, we're here to
> get justice.
>
> [Miles] commits a crime, a significant, serious crime involving poison that
> kills people, that carries this kind of stuff around that can kill people, that's
> what we're here for.  We're here to make sure that doesn't happen.  We're not
> here for convictions or statistics.  It makes no difference to me, whatsoever.
> I don't get paid, neither does that agent, by how many convictions we have.  I
> don't know how many I have or don't have.  We're here because a crime was
> committed, the evidence shows that crime, and we're here to get justice, as a
> result of that.  We're here to keep this stuff off the street.  Whether it be in
> Dillon, South Carolina or Paterson, New Jersey.
>
> . . . .
>
> That's what this is.  That's a drug dealer, a person whose been guilty, in the
> past, of possessing a weapon, but doesn't want to admit it, now.  Wants to
> dance around it.  Hayes may not have been the best witness in the world, but
> at least he was honest.  Yeah, you have to pull answers out of him, no

6

question about it.  He didn't want to do it, but he had to do what he had to do.  But he didn't bow down and he didn't crawl out, and he did - - when he did it, he admitted it.  He was man enough to admit it . . . .

*Id.* at 469-70.

The District Court then instructed the jury.  The District Court provided a general credibility instruction, informing the jury that they must determine the credibility of the witnesses and may take into account such considerations as the manner of testimony, corroboration or contradiction by other testimony, and any interest of the witness in the outcome of the case.  The jurors were also informed that statements and arguments by counsel "are not evidence in the case."  *Id.* at 479.  The District Court then specifically addressed Hayes's testimony by providing the following cautionary instruction:

> Now, members of the jury, one of the witnesses was Donald Hayes.  Now, Donald Hayes is known in the law as an accomplice, with whom the Government has entered into a plea agreement providing that the Government may request the Court to impose a lesser sentence than he would otherwise be exposed to for the offense to which he's pled guilty.  An alleged accomplice, including one who has entered into a plea agreement with the Government, is not prohibited from testifying.  On the contrary, the testimony of such a witness may, alone, be of sufficient weight to sustain a verdict of guilty.  You should keep in mind that such testimony is always to be received with caution and weighed with great care.  The Defendant should never be convicted upon the unsupported testimony of an alleged accomplice, unless you believed the testimony beyond a reasonable doubt.  As I mentioned, previously, the fact that an accomplice has entered into a plea of guilty, is not evidence of the guilt of this Defendant.  And you must determine whether [Hayes'] testimony has been influenced or affected by self-interest or by his plea agreement with the Government.
>
> Emphasizing, again, the testimony of an accomplice should be considered by you with caution and with great care, but that doesn't mean that you have to reject it.  If you're satisfied, beyond a reasonable doubt, that his testimony is

7

accurate and truthful, then, you may convict the Defendant, solely, on that unsubstantiated testimony.

*Id.* at 480-81.  The District Court also instructed the jury about the discrediting or impeaching of a witness by contradictory testimony or prior inconsistent statements, indicating that the jury had the exclusive province to give the testimony of a discredited witness the weight it thinks such testimony deserves.

The jury retired to deliberate.  It indicated that, while it had reached a verdict on the first and third counts, it was deadlocked with respect to the substantive drug charge in the second count.   The District Court asked the jurors to continue deliberations, and the jury eventually reached a verdict.  It found Miles guilty on both drug charges but not guilty on the gun charge.

The government moved for a downward departure in the sentencing of Hayes.  On December 22, 1997, Judge Nealon sentenced Hayes to a term of imprisonment of 51 months on the drug possession charge.  The District Court, in an order filed on December 30, 1997, dismissed the drug conspiracy and gun charges against Hayes.

Miles was eventually sentenced to imprisonment for a term of 324 months on April 29, 1998.  Miles appealed, and this Court affirmed Miles's conviction by unpublished opinion on March 1, 1999.

On January 25, 2000, Miles, acting *pro se*, submitted to the District Court a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel and prosecutorial misconduct.  The District Court denied Miles's motion in a

memorandum and accompanying order filed on October 27, 2000. It rejected Miles's assertion of ineffective assistance arising out of his trial counsel's failure to request a specific addict-informant instruction. The District Court further found that Miles cannot establish that his counsel was deficient in failing to object to the prosecutor's allegedly prejudicial comments where such comments were not improper. It finally rejected Miles's venue-based arguments.

Miles filed his notice of appeal on November 29, 2000. In an order dated February 14, 2002, this Court granted Miles's request for a certificate of appealability as to two issues: (1) whether his trial counsel provided ineffective assistance because he failed to request a cautionary addict-informant instruction; and (2) whether the trial counsel was ineffective in failing to object to or otherwise address the allegedly improper statements in the government's closing and rebuttal arguments. We specifically directed the parties to address the possible significance of uncorroborated testimony in determining the need for additional cautionary instructions. We also denied a certificate of appealability as to Miles's waived due process claim arising from the prosecutor's allegedly improper statements and his meritless venue claim. Counsel was appointed to represent Miles on this appeal.

## II.

We have jurisdiction over this appeal under 28 U.S.C. § 2253. The District Court exercised jurisdiction over Miles's motion to vacate his sentence pursuant to 28 U.S.C. § 2255.

It is well established that the Sixth Amendment to the United States Constitution provides a criminal defendant the right to the effective assistance of counsel. *See, e.g., McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In order for a convicted defendant to show that his or her counsel's assistance was so defective as to require overturning a conviction, the defendant must demonstrate that: (1) the counsel's representation fell below an objective standard of reasonableness; and (2) this deficient performance prejudiced the defense. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 687-88, 691-96 (1984). Prejudice exists if the defendant "demonstrate[s] a reasonable probability that, but for the unprofessional errors, the result would have been different." *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) (citation omitted). We must "review the district court's findings of facts for clear error" and "make an independent judgment . . . on whether the facts thus found constitute constitutionally ineffective assistance of counsel." *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430-31 (3d Cir. 1996) (citation omitted).

Neither the failure of his trial counsel to ask for a special addict instruction nor his failure to object to or otherwise address the allegedly improper statements in the prosecutor's closing and rebuttal arguments constituted ineffective assistance of counsel. The District Court therefore did not err in rejecting these two claims of ineffective assistance.

A. Addict Jury Instruction

This Court has never held in a published opinion that a district court is required to give a special cautionary instruction regarding the testimony of a drug addict, even when the defendant requests such an instruction. We did recommend the use of such an instruction in *United States v. Miele*, 989 F.2d 659, 666 (3d Cir. 1993), *United States v. Hopkins*, 518 F.2d 152, 154-55 (3d Cir. 1975), and *Government of Virgin Islands v. Hendricks*, 476 F.2d 776, 778-80 (1973). In our most recent discussion of this instruction in *Miele*, we stated that "[w]e have long followed the general rule that juries in criminal cases should be specially instructed to receive the testimony of an addict-informant witness with caution and to scrutinize it with care." 989 F.2d at 666 (citing *Hendricks*, 476 F.2d at 779-80; *United States v. Kinnard*, 465 F.2d 566, 570-71 (D.C. Cir. 1972)). However, we have never held that the failure to give such an instruction constitutes reversible error. In fact, the issue of jury instructions was not even before us in *Miele*, in which we vacated a sentence based, in part, on the district court's failure to subject the testimony of an addict-informant regarding drug quantity to special scrutiny. *Id.* at 666-68.

The absence of any published ruling by this Court expressly requiring an addict instruction indicates that Miles has failed to show that he received constitutionally ineffective assistance from his trial counsel. If the District Court were under no obligation to provide a requested addict instruction, Miles would be unable to show that the trial counsel's failure to request such an optional instruction was objectively unreasonable. He would be unable to show that the trial counsel's failure to request such an optional instruction was objectively unreasonable.

We do not hold that a district court is never required to give a requested addict instruction. Such a holding is unnecessary because, even if such an instruction is required under certain circumstances, the requisite circumstances are not present in this case.

As Miles contends, certain considerations do point to the necessity of an addict instruction. Addiction undoubtedly is a prerequisite for an addict instruction, *see, e.g., United States v. Urian*, 858 F.2d 124, 127 n.2 (3d Cir. 1988), and courts, including the Third Circuit, have also placed great weight on the presence or absence of substantial corroboration in assessing the necessity of any special instruction. *Hopkins*, 518 F.2d at 155; *Hendricks*, 476 F.2d at 779; *see also, e.g., United States v. Cook*, 949 F.2d 289, 295 (10th Cir. 1991); *United States v. McGhee*, 882 F.2d 1095, 1100 (6th Cir. 1989); *United States v. Griffin*, 382 F.2d 823, 828-29 (6th Cir. 1967). It appears undisputed that Hayes was an extensive crack cocaine user with a long history of drug abuse. Hayes's testimony was also essentially uncorroborated as to the central issue of whether Miles knew that they were transporting drugs. However, the other jury instructions actually provided by the District Court and the trial counsel's cross-examination of Hayes regarding his drug use clearly outweigh these two considerations.[2]

---

[2] Miles also argues that the alleged internal inconsistencies in Hayes's testimony indicate that an addict instruction should have been requested and given. The case law generally does not emphasize this issue of internal inconsistency. The Eleventh Circuit did state, in dictum, that additional instructions would have been "more important" if the addict's testimony had "been totally uncorroborated or had it suggested internal inconsistency." *United States v. Solomon*, 856 F.2d 1572, 1579 (11th Cir. 1988). In any case, such internal inconsistencies do not occupy an important role in this analysis and, at best, only marginally support the necessity of an addict instruction under these

The overall adequacy of the district court's jury instructions is perhaps the most important consideration in determining whether an addict instruction should have been given. We have emphasized the presence of other cautionary instructions in considering challenges to the district court's failure to provide a specific addict instruction. *Hopkins*, 518 F.2d at 155; *Hendricks*, 476 F.2d at 779. In *United States v. Urian,* 856 F.2d 124 (3d Cir. 1988), we found that the district court's refusal to give an addict instruction was appropriate partly because "the [district] judge's instructions did advise the jury to carefully assess the credibility of [the allegedly addicted] government witnesses." *Id.* at 127 n.2. Other circuits have likewise relied on the presence of other credibility instructions in finding that an addict instruction was not legally necessary. *See, e.g., United States v. Torres*, 115 F.3d 1033, 1038 (D.C. Cir. 1997); *United States v. Vgeri*, 51 F.3d 876, 881 (9th Cir. 1995); *McGhee*, 882 F.2d at 1100.

The instructions given at Miles's trial informed the jurors how they should assess a witness's credibility and warned them to consider Hayes's testimony with particular care. As the District Court pointed out, the jury received an instruction providing general guidance on how to assess a witness's credibility. This instruction directed the jury to consider such matters as the witness's appearance and whether the witness possesses an interest in the case's outcome. The District Court also instructed the jury regarding the impeachment of a witness through contradictory evidence and prior inconsistent

circumstances.

13

statements. It also went beyond these more general instructions and referred to Hayes's status as an accomplice and his plea agreement. The District Court emphatically told the jury to receive an accomplice's testimony with caution and to weigh it with great care. While not directly addressing Hayes's drug use, this accomplice instruction clearly warned the jury to consider Hayes's testimony with special care. Under these circumstances, an addict instruction would therefore appear to constitute a merely marginal and relatively insignificant addition to the extensive instructions actually given.

A full cross-examination of an addict regarding his drug use also indicates that an addict instruction may be unnecessary.[3] *Hopkins*, 518 F.2d at 155; *see also, e.g., Torres*, 115 F.3d at 1038; *Vgeri*, 51 F.3d at 881; *United States v. Smith*, 692 F.2d 658, 661 (10th Cir. 1982). While the trial counsel could have further explored the effects of Hayes's drug use on both his perception and possible incentives to color his testimony, he did question Hayes regarding his drug use, asking how he supported his habit and how much money he

---

[3] We must focus on the question of whether the adverse party adequately cross-examined the addict with respect to his or her addiction and not, as suggested by Miles, the issue of whether this cross-examination explored the substantive inconsistencies in the witness's testimony. In *United States v. Nicholson*, 983 F.2d 983 (10th Cir. 1993), the Tenth Circuit admittedly noted that "[d]efense counsel vigorously cross-examined each addict witness, drawing attention to their potential personal interests in testifying and to seeming inconsistencies in their testimony," *id.* at 991. The essential consideration, given the overall case law, must remain the adequacy of cross-examination regarding addiction. While substantive inconsistencies may be relevant because they possibly highlight the effects of the witness's addiction as well as his or her desire to color testimony in order to obtain drugs in the future, an inquiry into the lack of an addict instruction should not provide the means for a defendant to launch an attack on the overall sufficiency of cross-examination.

14

spent per day to purchase crack cocaine. The District Court therefore correctly found that Miles's "defense counsel cross-examined Hayes extensively regarding his drug use." App. at 27 (citing *Torres*, 115 F.3d at 1037-38; *United States v. Burrows*, 36 F.3d 875, 878 (9th Cir. 1994)).

We conclude, based on the District Court's ample jury instructions, and the cross-examination of Hayes regarding his drug use by Miles's trial counsel, that it would not have been necessary for the District Court to honor a request for an addict instruction. Because the District Court was under no obligation to provide a requested addict instruction in this case, Miles cannot demonstrate the prejudice and objectively unreasonable conduct necessary for a finding of ineffective assistance of counsel.

B. Prosecutorial Misconduct

Miles argues that his trial counsel provided ineffective assistance because he failed to object or otherwise respond to the allegedly improper statements made by the prosecutor in his closing and rebuttal arguments. Although no separate due process claim is before this Court, we must initially consider whether the prosecutor's comments violated Miles's right to due process in order to determine whether the trial counsel's failure to respond prejudiced the outcome of this case and was objectively unreasonable.[4] *See, e.g., United States v. Lively*, 817 F. Supp. 453, 465 (D. Del.), *aff'd*, 14 F.3d 50 (3d Cir. 1993) (unpublished table decision). The standard of review for assessing prosecutorial

_____

[4] Both the District Court and the parties themselves generally focus on this due process inquiry in addressing whether Miles has established an ineffective assistance claim.

comments is a narrow one in which "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted).

Miles challenges a number of comments made by the prosecutor, and we find that many of these statements were inappropriate. Specifically, the prosecutor's claim that he had "never seen a Judge accept a guilty plea from anyone who doesn't admit that they, in fact, did it" represents an improper expression of his personal experience. App. at 453. Even the government acknowledged at oral argument that this statement regarding guilty pleas should not have been made. In his rebuttal argument, the prosecutor indicated that "our purpose" was not to obtain a conviction but to "get justice" and that "[w]e're here to keep this stuff off the street." *Id.* at 469. He further stated that he did not get paid based on convictions and that he did not even know the number of convictions he has obtained. The prosecutor thereby, in addition to expressing his own personal view, diverted the jury's attention to the broader aim of suppressing the drug trade and away from its obligation to decide the case on the evidence presented. He possibly violated the prohibition in the American Bar Association's Standards for Criminal Justice of any argument by a prosecutor "which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused." Standards for Criminal Justice § 3-5.8(d).

These statements, however, were not sufficiently egregious, either taken together or separately, to deprive Miles of his due process right to a constitutionally fair trial. The

16

objectionable comments occupied only a minor role in the prosecutor's arguments and the overall trial. The jury was also instructed that statements and arguments by counsel "are not evidence in this case." App. at 479. Given the absence of a constitutional violation, his trial's counsel's failure to object to or otherwise address the prosecutor's comments neither prejudiced Miles's defense nor fell below the standard of objectively reasonable conduct. On the contrary, the trial counsel may have made a reasonable strategic choice in not drawing further attention to these statements. *See, e.g., Lively*, 817 F. Supp. at 466.

III.

For the foregoing reasons, the judgment of the District Court entered on October 27, 2000 will be affirmed.

————————

TO THE CLERK:

Please file the foregoing opinion.

        /s/ Robert E. Cowen
        United States Circuit Judge