

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-2008

# USA v. Rasberry

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2298

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Rasberry" (2008). *2008 Decisions.* Paper 895.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/895

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2298

UNITED STATES OF AMERICA

Appellee

v.

GERALD RASBERRY

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 05-cr-0271)
District Judge: The Honorable William J. Nealon

Submitted Under Third Circuit LAR 34.1(a)
May 13, 2008

Before: ROTH and MCKEE, Circuit Judges
O'NEILL*, District Judge

(Filed: July 7, 2008)

_____

*The Honorable Thomas N. O'Neill, Jr., United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

O'NEILL, <u>District Judge</u>

Appellant Gerald Rasberry challenges whether the government produced sufficient evidence at trial to support the jury's guilty verdict. Appellant asserts that there was insufficient evidence that he knowingly possessed a firearm as there was no physical or forensic evidence, and the pertinent testimony was either unreliable, incredible or inconclusive. We conclude that there was sufficient evidence that appellant knowingly possessed a firearm in support of the jury's verdict. We therefore will affirm.[1]

**I.**

Because we write only for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts necessary to our analysis.

On July 29, 2003, a confidential informant, Richard Ianuale, arranged to buy a .22 caliber pistol from appellant and his cousin, Russell Jones. Ianuale conducted a controlled purchase in which he obtained a .32 caliber pistol from appellant and Jones on July 30, 2003. Tape recordings were made of this controlled purchase and played during

---

[1]Appellant also contends that the District Court erred by applying the preponderance of the evidence standard to find facts upon which it based its Guidelines sentencing calculations. However, appellant acknowledges that this practice is in accordance with this Court's binding precedent in <u>United States v. Grier</u>, 475 F.3d 556, 568 (3d Cir. 2007) (en banc), and simply asserts this issue to preserve it. We affirm the District Court's judgment in this regard as well.

trial.

The tape recordings recorded Ianule attempting to persuade appellant to sell him a .45 caliber pistol and asking how appellant had acquired that gun. Appellant answered, "Easy. New York you can get em all brand new in the box if you find the right people. But you have to pay crazy money." Ianule responded, "I know it. I know it. New York's fuckin insane. Up here is no fuckin difference. Look what I'm given you for a fuckin 22. $300.00 fuckin dollars. And it's fuckin hot. I can't even fuckin re-sell it."

Later in that same conversation, the jury heard Ianule and appellant discuss the arranged purchase of a .22 caliber pistol.

Ianule: You think you can push this motherfuckin' nimrod until tomorrow morning? I come over at noon? The guy had to go to a baseball game. With his kids, like I said, alright?

Rasberry: Push it where?

Ianule: He's getting, I get the gun tomorrow. The guy's off tomorrow at noon.

Rasberry: Well, I'll push, I'll tell him to go ahead –

Ianule: Push him.

Rasberry: Yeah I have to 'cause the only way he could find it where he put it is in daylight.

Ianule: Right.

Rasberry: I told him to do it last night but he fucked, that's why I got the flash batteries cause he killed all the batteries lookin' for shit on the floor.

Ianule: Are you on- he wants to be a fuckin' rock star and that's all good,

3

know what I mean?  That's all good.

Rasberry: I like to make money.

Ianule: You know what, that's right, that's right.  I see you as the brains of the operation here.  But, you know what I mean, you got a fuckin' .22, it's fuckin' buried in the ground, you can't fuckin' play with it, get rid of the motherfucker.

Rasberry: That's what I told him.  I said - whether, if.  Oh, man fuck it.

Ianule: What'd he say, he thought it was stolen from a cop or somethin'?

Rasberry: I don't know, he that's what he thought.  That's what this guy said.  Some bullshit, I don't know why he put it over there.  And I don't even know why he mentioned all that shit.  He's so stupid!

Ianule: Aw, I don't give a fuck.

Rasberry: I know I –

Ianule: where it comes from.  They guy's gonna walk into, fuckin', the guy's goin' over his fuckin' house, he's gonna shoot the fuckin' – into the fuckin' car empty a clip on man and maybe empty a clip on his fuckin' Harley.  He don't give a fuck.  And then the fuckin' gun's goin' into the river.

Rasberry: Yeah I understand all that.  He just ain't supposed to tell you, you know just say, well, it's a cop's gun.

Ianule: Well, I'd rather have it fuckin' hot.  I could care less where it comes from.  (Pause)  No, hot gun's are easy, you throw them in the fuckin' river.  Ain't no bodies on it though, right?  That's all good.  I'll bring gloves, know what I mean, with my prints on the motherfucker.  (Pause) Hey if you get it in your hands, make sure you shoot her down with WD-40, that's how you get prints off her.

Rasberry: He ain't even got the clip with it.  The clip, I found the clip last night when I was diggin' lookin' for some tools.  The clip is in the goddamn garage.

4

Ianule: Well, I want the whole gun.

Rasberry: He's so fuckin' stupid.  He ain't even got the clip with the gun.
But I think he got 3 or 4 bullets.  I'm not sure.  Probably can get .22's.

As to the actual purchase itself, the jury heard the following conversation between appellant, Ianule and Jones:

Ianule: I caught him at the gas station, he waiting for me.

Rasberry: He ain't gonna give it to you unless...

Ianule: I got cash in my pocket

Rasberry: Oh...

Ianule: Yea, I got his cash for the gun, no problem

Ianule: (Inaudible)

Rasberry: This gas station

Ianule: Yea, I got to drop this off...(Inaudible)

Rasberry: I hear what your saying, but...

Ianule: I'm gonna run there and come right back...

Ianule: Alright

Ianule: I'm gonna drop off the gun at the gas station then come right back
and get you.

Jones: You got the money for the gun

Ianule: I got the money...(Inaudible) in my pocket.

Jones: Alright man.

5

Jones: (Inaudible)

Rasberry: Are we leaving him the 30, 32 then

Jones: Yea

Rasberry: 32

Ianule: Oh, it's a 32, I thought your said 22

Rasberry: This one's a 32.

Jones: The 22 is my hit man gun

Ianule: Oh, your hit man gun, (laughing)...alright

Jones: How much is that...

Ianule: There's 3.  For a 32, I can give you 250.

Jones: No, you should give me 4.

Rasberry: For a 22, you get less.

Ianule: A 32 is less than a 22.

Jones: Hell no.

Rasberry: 32, then a 22.

Ianule: 22 will do more fucking damage...man ricochet like a fucking rabbit.

Ianule: (Unintelligible)

Ianule: Yea, I hear ya, you'll see, you'll see

Jones: He even got a bag to go with that

Jones: (Unintelligible)

Rasberry: (Unintelligible)...That bag.

Jones: Same one you had today.

Ianule: Oh, all right...

Jones: Clip

Ianule: I thought you said the 22.

Jones: No, that's the 32

Ianule: Oh, all right

Jones: Load joint

Rasberry: Might have been one in the...

Ianule: Is that the one from the cop?

Jones: Na, na, na, not from the cop.

Ianule: Oh its not from the cop?

Jones: Na, na, na.

Ianule: Oh, all right.

Jones: He still can get what you said he gonna use this to shoot up the mother fucking house though.

In addition to the tape recordings, the government also presented testimony from Special Agent Seth Graybill of the Bureau of Alcohol, Tobacco and Firearms outlining the circumstances surrounding the controlled buy. Agent Graybill also testified that the address on appellant's license as of July 2003 was 17 Highland Circle and that appellant admitted to living there during the relevant time frame. Moreover, Agent Graybill stated

7

that the individual he personally observed dealing with Ianule matched appellant's description, and that appellant's voice matched the one on the tape recordings.

Furthermore, Ianule himself testified as to the events of the July 30, 2003 controlled buy and the parties involved. He also testified that when he bought the firearm from appellant and Jones appellant had the firearm in his hand and gave it directly to Ianule. During cross examination, Ianule admitted to troubles with law, other dishonest behavior, drug use, and his compensation for cooperating with the government.

On December 18, 2006, a jury convicted Rasberry of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), specifically a Llama .32 caliber semi-automatic pistol. On April 18, 2007, the District Court sentenced Rasberry to 51 months imprisonment, followed by three years of supervised release. This timely appeal followed.

## II.

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. When reviewing a jury verdict for sufficiency of the evidence, we employ a highly deferential standard. See United States v. Greenridge, 495 F.3d 85, 100 (3d Cir. 2007). We must "view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Leahy, 445 F.3d 634, 657 (3d Cir. 2006) (citation omitted).

## III.

Such "a claim of insufficiency of the evidence places a very heavy burden on the appellant." Id. Appellant clearly has failed to carry that burden here. The evidence in this case, when viewed in the light most favorable to the government, was sufficient for a rational trier of fact to find based upon that evidence that appellant was guilty beyond a reasonable doubt of all the elements of possession of a firearm by a convicted felon.

Prior to trial, appellant and the government stipulated that the firearm had moved in interstate commerce and that appellant was a convicted felon. As a result, the only issue at trial was whether appellant had knowingly possessed the firearm. Possession is "having or holding property in one's power; the exercise of dominion over property." Black's Law Dictionary 1201 (8th ed. 2004). Possession can be either actual or constructive. Constructive possession requires that "an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (citation omitted). Thus, "both 'dominion and control' over an object and knowledge of that object's existence" is necessary. Id.

On appeal, appellant claims the government failed to produce sufficient evidence at trial to sustain the jury's verdict of guilty because there was no physical or forensic evidence tying appellant to the firearm. Moreover, appellant argues that all of the direct testimonial evidence against appellant was not credible. Specifically, appellant asserts

9

that Special Agent Graybill's perception was fatally compromised and Ianule was a drug-abusing convicted felon with a past history of lying as well as incentive to do the same here.

First, there is no legal requirement that the government present physical or forensic evidence tying appellant to the firearm, and the lack of the same is an issue for the jury. Moreover, in lieu of physical or forensic evidence, the government presented the tape recordings using appellant's own words as proof of the transaction and appellant's involvement. The jury chose to believe that it was appellant on the tape recordings discussing with Ianule the sale of .22 caliber pistol, and later negotiating the price of a .32 caliber pistol. The government also presented substantial direct testimony from both Agent Graybill and Ianule tying appellant to the firearm.

Although only Ianule testified to actually seeing appellant with the firearm in his hand,[2] the testimony of a single witness even standing alone is sufficient to uphold a conviction. See Gov't of Virgin Islands v. Henry, 232 Fed. Appx. 170, 174 (3d Cir. 2007); compare United States v. Perez, 280 F.3d 318, 344 (3d Cir. 2002) (holding that uncorroborated accomplice testimony may provide the exclusive basis for a criminal conviction); United States v. De Larosa, 450 F.3d 1057, 1060 (3d Cir. 1971) (same). Moreover, similar to United States v. Hopkins, Ianule's testimony was corroborated in

_____

[2]We also note that the government need not prove actual possession. Even in the absence of Ianule's testimony, there is sufficient evidence that would have provided a basis for the jury to find constructive possession (e.g. the tape recording of appellant negotiating the sale price of the firearm with Ianule).

part "by federal agents who kept him under surveillance immediately before and during the critical period of his alleged transaction with" appellant. 518 F.2d 152, 154 (3d Cir. 1975).

Contrary to appellant's arguments, "it is not for us to weigh the evidence or to determine the credibility of the witnesses." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (citation omitted). The limitations of the tape recordings and questions regarding the identity of the speakers recorded were explored during cross-examination of Agents Graybill and Kovach. Moreover, several facts reflecting poorly on Ianule's credibility were highlighted for the jury during the testimony of both Ianule and Agent Graybill. See id. at 154-55. Thus, we cannot overturn the jury's verdict because it chose to believe it was appellant's voice on the tape recordings, or that it found the testimony of Ianule and Agent Graybill credible. As long as a rational trier of fact could have found appellant guilty beyond a reasonable doubt of the crimes with which he was charged we must sustain the jury's verdict. The evidence in this case as outlined above was sufficient for a rational trier of fact to find that appellant had possession of a firearm.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

11