**UNITED STATES of America,**

v.

**Joseph WENZEL, Appellant.**

No. 02–3264.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 15, 2003.

Decided July 31, 2003.

---

Before MCKEE, BARRY, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This is the second time we have considered whether the District Court erred in an upward departure in sentencing the defendant for threatening a number of individuals associated with this case and unsuccessfully soliciting serious violence to others. The complex factual and procedural history of this case is known to the parties. Accordingly, we recount only the facts that are necessary to provide context for our conclusions of law. Essentially, this appeal hinges on whether the District Court erred in crediting the testimony of William Maden [1] in resentencing. Wenzel makes two arguments. First, he contends that he was denied due process due to the District Court's alleged misinterpretation of a statement by Father James Peterson. Second, he argues that the District Court erred in finding Maden credible. We affirm.[2]

### I.

Father Peterson testified during Maden's sentencing hearing in the Erie County Court of Common Pleas on July 31, 2000 and Wenzel provided a copy of that testimony to the District Court as an exhibit during Wenzel's 28 U.S.C. § 2255 collateral proceedings. Peterson stated: "... Your Honor, in regard to this business about being solicited for murder, when [Maden] talked to me about it, he said that he knew that he would run into some problems with people. And I said that it's nothing to do for a bargain, but

1. Throughout the course of the proceedings in the district court, Mr. Maden's name has been spelled both Maden and Madden. Mr. Maden testified that his name is spelled Maden. Curiously, however, when Maden wrote to the District Court immediately before Mr. Wenzel's resentencing, he signed his letter William Madden. Maden will be referred to in this opinion as Maden.

2. The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 and 28 U.S.C. § 2255. The District Court's August 6, 2002 sentencing order was a final order for the purposes of 18 U.S.C. § 1291. On August 14, 2002, appellant filed a timely notice of appeal.

it's the right thing to do. *And he did it because it's the right thing to do."* (emphasis added). At resentencing, the District Court erroneously stated: "Additionally, I recall and I continue to find significant Father Peterson's testimony at the previous hearing to the effect that Mr. Maden *had told him* that although he knew he would potentially run into some trouble as a result of his testimony, he testified because he did believe it was the right thing to do." (emphasis added).

■ Wenzel argues that the District Court based its finding on the "materially untrue assumption" that Maden told Peterson that he had testified because it was the right thing to do. Wenzel accurately argues that Maden never said this to Peterson and that this was merely Peterson's conclusion. Maden later averred that his motive for testifying was to reduce the sentence that he was facing. Wenzel argues that the District Court misremembered Peterson's testimony. Defense counsel did not object to the District Court's finding at trial.[3] Thus, we review under a plain error standard.

The District Court's finding was not erroneous. It was Father Peterson's opinion that Maden testified because it was the right thing to do. The basis of Peterson's opinion is not clear from the record. It is possible that Maden said something or communicated non-verbally in a way that led Peterson to believe that Maden agreed with his statement that he should testify because it is the right thing to do. It may also be that Peterson accepted Maden's

silence as an acquiescence to Peterson's advice that giving testimony was the right thing to do. Fact-finders are permitted to make all reasonable inferences and it would be reasonable to infer from Father Peterson's testimony that Maden acquiesced in some way. Maden later averred that he testified in order to "get help with [his] sentencing." Wenzel argues that this statement flatly contradicts the District Court's finding. We disagree. Many government witnesses have mixed motives for testifying.

Wenzel's argument also fails because the District Court's finding did not prejudice the defendant. Though "significant," Father Peterson's testimony was merely one of several pieces of evidence that led the District Court to find Maden credible. The District Court had previously found Maden credible on two separate occasions. The purpose of the resentencing hearing was to determine whether Wenzel had new evidence that undermined the District Court's previous finding. With or without Father Peterson's testimony, there was sufficient evidence to determine that Maden was credible. In the absence of prejudice, Wenzel cannot carry his burden of establishing error. *See United States v. Vazquez,* 271 F.3d 93, 99 (3d Cir.2001). The District Court's finding also did not affect the fairness, integrity, or public reputation of the judicial proceedings. *See id.*

## II.

■ The District Court found Maden's testimony credible in spite of his state-

---

**3.** Before the resentencing hearing, the Government urged the interpretation of Father Peterson's testimony that the District Court adopted. Thus, the defendant was on notice and had every opportunity to object but did not do so. In Wenzel's reply brief, he raises for the first time the argument that defense counsel's failure to object again raises the *specter of ineffective assistance of counsel.* We decline to address this argument because

we generally do not consider claims of ineffective assistance of counsel on direct appeal, subject to exceptions that do not apply here. *United States v. Haywood,* 155 F.3d 674, 678 (3d Cir.1998). Moreover, we generally do not consider arguments raised for the first time in a reply brief. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 204–05 n. 29 (3d Cir. 1990).

658

ments to other inmates that he had lied under oath in Wenzel's case. Defendant attributes a number of errors to this finding. First, he argues that it represents an abdication of the District Court's fact-finding function to the FBI. Second, he criticizes the District Court for not specifically addressing Radames Perez' testimony, or the testimony of Joseph Tarquinio and Dan Brennan. Third, he contends that the District Court should have given more weight to evidence of Maden's previous perjury; Maden's statements to cell mates that he perjured himself in this case; Maden's purported willingness to lie to ensure steady access to drugs; and Paul Jasler's statement that he concluded that FBI agent Shawn VanSlyke thought Maden's testimony in Wenzel's case was "constructed." Fourth, Wenzel argues that the District Court erred in finding that Maden's testimony was corroborated by other witnesses. Fifth, he contends that the District Court erred in attributing altruistic motives to Maden with regard to his willingness to testify.

All of defendant's arguments lack merit. The standard of review of a District Court's decision to credit a witness' testimony is quite deferential. Under the clearly erroneous standard, we will only reverse a finding of fact if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data. *See United States v. Haut*, 107 F.3d 213, 218 (3d Cir.1997). Review of a District Court's decision to credit a witness' testimony is particularly deferential. *See United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir.1997).

The District Court duly considered Maden's statements to fellow inmates that he perjured himself in this case. Maden reportedly told another witness that he "made it all up" to get credit for his testimony. On May 18, 2000, FBI agents interviewed prisoners incarcerated with Ma-

den who confirmed that Maden had stated that he had fabricated his testimony against Wenzel. Defense witness Perez testified at the resentencing hearing that Maden made similar statements to him. FBI agents VanSlyke and Gerald Nichols confronted Maden about his reported perjury. After waiving his *Miranda* rights, Maden explained that he lied to other inmates in a disinformation campaign to protect himself from retribution inside the Erie County Prison. The agents were satisfied with Maden's explanation and concluded that Maden's testimony had been truthful.

Wenzel argues that the District Court abdicated its fact-finding function to the FBI. The basis for this argument is the District Court's statement that "I do credit the conclusion of the FBI that Mr. Maden's disinformation campaign, which he waged with other inmates, was driven by perceived threats to his own safety and was not reflective of perjured testimony." This is a slender reed on which to hang an objection. *Cf. United States v. Spiropoulos*, 976 F.2d 155, 163 (3d Cir.1992) (explaining that "[we cannot] hold judges to standards of linguistic perfection, especially in the setting of remarks from the bench in the crucible of a highly charged sentencing hearing"). It is clear from the record that Judge McLaughlin did exercise a fact-finding role here. He heard live testimony regarding sentencing issues three times throughout the course of these proceedings. He asked questions of counsel and witnesses. Furthermore, he issued detailed findings. Thus, when Judge McLaughlin stated that "I do credit the conclusion of the FBI" we take that to mean that he agreed with the position of the FBI on the basis of the evidence before him. This interpretation is supported by the next sentence of the finding which states that "[t]he record in this case does

amply reflect Mr. Maden's concerns about his safety ..." (*Id.*) We conclude that there is no evidence of improper delegation or abdication here.[4]

Defendant also argues that the District Court erred because it did not explicitly address Radames Perez's testimony. Perez averred that Maden did not need to engage in a disinformation campaign to protect himself because inmates in the Erie County Jail did not retaliate against cooperating government witnesses. The District Court did not mention Perez by name, but it did address the substance of Perez's testimony involving Maden's conflicting statements to fellow inmates. Judge McLaughlin concluded, based on VanSlykes' testimony that Maden's statements to his fellow inmates, rather than his in-court statements, were fabrications.[5] Moreover, there was ample evidence to support the District Court's finding that Maden feared retaliation due to his testimony in this case. Maden testified to these fears on several occasions.

Wenzel argues that the District Court overlooked Maden's purported willingness to lie to ensure steady access to drugs. Judge McLaughlin acknowledged that Maden was a drug addict but concluded that Maden was not under the influence of drugs when he testified or when he talked to Wenzel. Wenzel contends that the District Court did not sufficiently recognize that Wenzel's drug dependency gave him a powerful motive to lie. Defendant points to *Government of Virgin Islands v. Hendricks,* 476 F.2d 776 (3d Cir.1973), for the proposition that addict-informers face the immediate threat of being jailed and thereby kept from access to the drugs to which they are addicted. *See id.* at 780. The fact that the District Court did not specifically address the possibility that Maden's addiction might make him especially prone to lying to reduce his sentence is not alone a reason to overturn the District Court's well-founded credibility finding.[6]

The District Court did not err in giving little weight to Paul Jasler's testimony. Defendant criticizes the District Court for not crediting Jasler's statement that he concluded that VanSlyke thought Maden's testimony in Wenzel's case was "constructed." However, the District Court "carefully considered" Jasler's testimony and concluded that Jasler's report was riddled with "demonstrable factual inconsistencies."[7] Jasler, not VanSlyke, used the word "constructed." Jasler's conclusion may have resulted from "an innocent

---

4. Wenzel also takes issue with Maden's statement at the original hearing that his criminal charges in Erie County were "lightweight felonies." Maden's charges involved stealing a small quantity of alcohol, rosary beads, and a winter coat; criminal trespass; and stealing a car and driving it into a nearby fire hydrant.

5. Defendant criticizes the government for not calling Maden to explain his disinformation campaign. We note, however, that hearsay is admissible in a resentencing hearing and VanSlyke's testimony meets the minimum indicia of reliability required for admissibility. *See United States v. Paulino,* 996 F.2d 1541, 1548 (3d Cir.1993).

6. Likewise, the District Court considered Maden's testimony with particular caution because of his previous perjury. Judge McLaughlin recognized that Maden was "unquestionably no saint" (Dist. Ct. op. at A 7), but concluded that Maden did not lie in his testimony at Wenzel's sentencing hearing.

7. Jasler thought there had been a trial when in fact Wenzel had entered a plea. Additionally, Jasler thought Wenzel had testified, but he did not take the stand on his own behalf. Jasler also erroneously believed that Maden had refused to take a polygraph. In fact, Maden offered to take a polygraph, but the FBI declined. Finally, Jasler himself admitted that Maden was reliable.

breakdown of communication" between Jasler and VanSlyke.

Wenzel's argument that Maden's testimony—that Wenzel solicited Maden to kill both Wenzel's brother and the federal prosecutor in Wenzel's case—was uncorroborated also fails. The District Court pointed out that Greg Muldrew, Scott Murosky, and Larry Elder testified to Wenzel's expressed intent to harm or kill the prosecutor. Also, in a tape-recorded conversation, Wenzel described to Muldrew the location of the prosecutor's residence. Finally, evidence was presented regarding Wenzel's intent to harm or kill other individuals involved in his case. Defendant's interpretation of corroborating evidence is too narrow. Corroborating evidence means "[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point." *Black's Law Dictionary* 344–45 (6th ed.1990). Wenzel argues that Maden's testimony was uncorroborated because no other witness testified (1) that Wenzel tried to hire Maden to kill Wenzel's brother and the prosecutor or (2) that Wenzel tried to hire him or her to kill Wenzel's brother or the prosecutor. We agree with the District Court that Muldrew, Murosky and Elder's testimony with regard to the prosecutor, the tape-recorded conversation regarding the prosecutor and the evidence that Wenzel intended to harm or kill other individuals involved in his case provided corroboratory support to Maden's testimony.[8]

8. As discussed *supra* Part I, we reject Wenzel's argument that the District Court mischaracterized Maden's motives to testify. Defendant raised this argument both with regard to the constitutional question of whether Wenzel was denied due process and also with regard to the question of whether the District Court erred in crediting Maden's testimony.

9. Speaking only for himself, Judge Rosenn notes that he continues to be concerned that

III.

The District Court's sentence entered August 6, 2002 will be affirmed.[9]

sentencing a defendant for uncharged crimes that are much more serious than those to which he pled guilty, without indictment and the right to a jury trial, violates the Due Process Clause of the Fifth Amendment, as well as the Seventh Amendment. On this question, however, this panel is bound by *United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990). *Cf. id.* at 1119–21 (Rosenn, J., concurring).